**[ORAL ARGUMENT NOT SCHEDULED]**

**No. 23-5149**

---

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

J. GREGORY SIDAK,

Plaintiff-Appellee,

v.

UNITED STATES INTERNATIONAL TRADE COMMISSION; DAVID S. JOHANSON, RHONDA K. SCHMIDTLEIN, JASON E. KEARNS, RANDOLPH J. STAYIN, AMY A. KARPEL, in their official capacities as Commissioners of the U.S. International Trade Commission,

Defendants-Appellants.

———————————

On Appeal from the United States District Court
for the District of Columbia

———————————

## BRIEF FOR APPELLANTS

———————————

BRIAN M. BOYNTON
*Principal Deputy Assistant*
*Attorney General*

JOSHUA M. SALZMAN
ANNA M. STAPLETON
*Attorneys, Appellate Staff*
*Civil Division, Room 7213*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-3511*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), the undersigned counsel certifies as follows:

### A.    Parties and Amici

Plaintiff-appellee is J. Gregory Sidak.

Defendants-appellants are the U.S. International Trade Commission and David S. Johanson, Rhonda K. Schmidtlein, Jason E. Kearns, Randolph J. Stayin, and Amy A. Karpel, in their official capacities as Commissioners of the U.S. International Trade Commission.

### B.    Rulings Under Review

Defendants-appellants appeal from the memorandum and order issued on May 5, 2023, by the Honorable Trevor N. McFadden (D.D.C. Case No. 1:23-cv-00325), granting plaintiff-appellee's motion for summary judgment and entering an injunction against defendants.

### C.    Related Cases

Counsel is not aware of any related cases within the meaning of D.C. Circuit Rule 28(a)(1)(C).

/s/ Anna M. Stapleton
Anna M. Stapleton

# TABLE OF CONTENTS

**Page**

GLOSSARY

INTRODUCTION.................................................................1

STATEMENT OF JURISDICTION.........................................5

STATEMENT OF THE ISSUES............................................5

PERTINENT STATUTES AND REGULATIONS ....................5

STATEMENT OF THE CASE ...............................................6

    A.    Statutory and Regulatory Background .................................6

    B.    The Appointments Clause......................................9

    C.    Factual Background and Prior Proceedings........................10

SUMMARY OF ARGUMENT ...............................................17

STANDARD OF REVIEW....................................................21

ARGUMENT ......................................................................22

I.    This Case Is Not Presently Justiciable..........................22

    A.    Judicial review is not available to consider the merits of an ongoing agency investigation.......................................22

    B.    The *Axon* exception to ordinary finality requirements does not apply here. ............................................28

II.    Plaintiff Is Not Entitled To Relief On His Appointments Clause Claim. ...................................................33

A.     Plaintiff forfeited any challenge to the validity of the protective order by voluntarily agreeing to be bound by its terms.................................................................34

B.     Plaintiff's claim is not timely. .................................................41

C.     Relief would not serve the purposes of Appointments Clause remedies. ...................................................45

III.   The District Court Committed Legal Error In Granting Injunctive Relief Without Undertaking Equitable Balancing. .....48

A.     The district court's failure to address the four-part framework for grants of equitable relief constitutes an abuse of discretion..............................................49

B.     The balance of equities and public interest in this case strongly favor the government.............................................51

CONCLUSION .................................................................54

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:**                                                                                          **Page(s)**

*Anatol Zukerman & Charles Krause Reporting, LLC v.*
*U.S. Postal Serv.*,
64 F.4th 1354 (D.C. Cir. 2023) .......................................... 16-17, 21, 49

*Arch Coal, Inc. v. Acosta*,
888 F.3d 493 (D.C. Cir. 2018) ....................................................... 32

*Arthrex, Inc. v. Smith & Nephew, Inc.*,
941 F.3d 1320 (Fed. Cir. 2019) ........................................................ 40

*Axon Enter., Inc. v. FTC*,
598 U.S. 175 (2023) ............................................. 15, 17, 28, 29, 30, 31

*Ball v. United States*,
140 U.S. 118 (1891) ........................................................................ 41-42

*Carr v. Saul*,
593 U.S. 83 (2021) ................................................................ 37, 41, 43

*Ciena Corp. v. Oyster Optics, LLC*,
958 F.3d 1157 (Fed. Cir. 2020) .................................. 35-36, 36, 37, 40

*Cody v. Kijakazi*,
48 F.4th 956 (9th Cir. 2022) ............................................................ 16

*Collins v. Yellen*,
141 S. Ct. 1761 (2021) ..................................................................... 16

*Commodity Futures Trading Comm'n v. Schor*,
478 U.S. 833 (1986) .................................................................... 35, 37

*DBC, In re*,
545 F.3d 1373 (Fed. Cir. 2008) ........................................................ 41

*Defenders of Wildlife v. Zinke*,
849 F.3d 1077 (D.C. Cir. 2017) ........................................................ 21

*eBay Inc. v. MercExchange, LLC*,
547 U.S. 388 (2006) .................................................................... 20, 49

*Edd Potter Coal Co. v. Director, Office of Workers' Comp. Programs*,
   39 F.4th 202 (4th Cir. 2022) ............................................................ 48

*Elgin v. Department of Treasury*,
   567 U.S. 1 (2012) ........................................................................... 30

*Florida Power & Light Co. v. Lorion*,
   470 U.S. 729 (1985) ....................................................................... 22

*Free Enter. Fund v. Public Co. Accounting Oversight Bd.*,
   561 U.S. 477 (2010)................................................................... 10, 30

*Freytag v. Commissioner*,
   501 U.S. 868 (1991) ......................................................... 34, 40, 48

*FTC v. Standard Oil Co. of Cal.*,
   449 U.S. 232 (1980) ............................... 22, 23, 24-25, 25, 28, 31-32

*Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*,
   574 F.3d 748 (D.C. Cir. 2009) ...................................... 18, 34, 39, 40

*Island Creek Coal Co. v. Wilkerson*,
   910 F.3d 254 (6th Cir. 2018) .................................................... 34, 39

*Jones Bros., Inc. v. Secretary of Labor*,
   898 F.3d 669 (6th Cir. 2018) ........................................................ 40

*Joseph Forrester Trucking v. Director, Office of Workers'
Comp. Programs*,
   987 F.3d 581 (6th Cir. 2021) ........................................................ 48

*Lucia v. SEC*,
   138 S. Ct. 2044 (2018) .............................. 10, 16, 18, 20, 33, 41, 45

*McDowell v. United States*,
   159 U.S. 596 (1895)...................................................................... 42

*McGee v. United States*,
   402 U.S. 479 (1971)...................................................................... 25

*McKart v. United States*,
   395 U.S. 185 (1969)...................................................................... 25

v

*National Treasury Emps. Union v. United States,*
   101 F.3d 1423 (D.C. Cir. 1996) ........................................................ 24

*Nken v. Holder,*
   556 U.S. 418 (2009) ........................................................................ 49

*Norton v. Shelby County,*
   118 U.S. 425 (1886) .................................................................. 42, 44

*Phillips v. Payne,*
   92 U.S. 130 (1875) .................................................................... 19, 42

*Ryder v. United States,*
   515 U.S. 177 (1995) ........................................ 19, 20, 41, 42, 43, 44, 46

*Saline Parents v. Garland,*
   88 F.4th 298 (D.C. Cir. 2023) ........................................................ 24

*Sandoz Inc. v. Becerra,*
   57 F.4th 272 (D.C. Cir. 2023) ........................................................ 41

*Springsteen-Abbott v. SEC,*
   989 F.3d 4 (D.C. Cir. 2021) ...................................................... 34, 39

*Thunder Basin Coal Co. v. Reich,*
   510 U.S. 200 (1994) .................................................................. 29, 30

*Ticor Title Ins. Co. v. FTC,*
   814 F.2d 731 (D.C. Cir. 1987) .................................................... 23-24

*Trump v. New York,*
   141 S. Ct. 530 (2020) ...................................................................... 24

*Valve Corp. v. Ironburg Inventions Ltd.,*
   8 F.4th 1364 (Fed. Cir. 2021) ........................................................ 36

*Weinberger v. Salfi,*
   422 U.S. 749 (1975) ........................................................................ 25

*Winter v. Natural Res. Def. Council, Inc.,*
   555 U.S. 7 (2008) ............................................................................ 49

**U.S. Constitution:**

Art. II, § 2, cl. 2 ................................................................. 9, 10

**Statutes:**

Administrative Procedure Act (APA):
   5 U.S.C. § 704 ............................................................ 23
   5 U.S.C. § 706 ............................................................ 23

19 U.S.C. § 1330(a) ......................................................... 6

19 U.S.C. § 1331(a)(1)(A)(i) ............................................ 10

19 U.S.C. § 1331(a)(1)(C) ................................................ 10

19 U.S.C. § 1331(n) ........................................................ 10

19 U.S.C. § 1337 ............................................................. 6

19 U.S.C. § 1337(c) ......................................................... 7

19 U.S.C. § 1337(d)(1) ..................................................... 11

19 U.S.C. § 1337(f)(1) ...................................................... 11

19 U.S.C. § 1337(n)(1) ................................................. 1, 7, 8

28 U.S.C. § 1291 ............................................................. 5

28 U.S.C. § 1331 ............................................................. 5

**Regulations:**

19 C.F.R. § 201.6(a)(1) ................................................... 8

19 C.F.R. § 210.5(a) ....................................................... 8

19 C.F.R. § 210.5(b)(1) .................................................... 9

19 C.F.R. § 210.5(e)(1) .................................................... 8

19 C.F.R. § 210.33(b) ................................................................... 9

19 C.F.R. § 210.34(a) ................................................................... 8

19 C.F.R. § 210.34(c) ................................................................... 9

19 C.F.R. § 210.34(c)(1) .............................................................. 9

19 C.F.R. § 210.34(c)(2) .............................................................. 9

19 C.F.R. § 210.42 ....................................................................... 6

19 C.F.R. § 210.43 ....................................................................... 7

19 C.F.R. § 210.50(b) ................................................................. 11

**Other Authorities:**

Order, *Loma Linda-Inland Consortium for Healthcare*
   *Educ. v. NLRB*,
   No. 23-5096 (D.C. Cir. May 25, 2023) ................................................. 32

Summary of Commission Practice Relating to
   Administrative Protective Orders,
   87 Fed. Reg. 69,331 (Nov. 18, 2022) ................................................. 26

## GLOSSARY

| | |
|---|---|
| ALJ | Administrative law judge |
| APA | Administrative Procedure Act |
| SEC | Securities and Exchange Commission |

## INTRODUCTION

To facilitate an engagement as a paid expert witness in a patent dispute between two private parties, plaintiff-appellee J. Gregory Sidak voluntarily signed an agreement "[t]o be bound by the terms of [a] Protective Order." JA 48. The proceeding was conducted before the U.S. International Trade Commission (Commission), where strict protection of confidential business information is statutorily required. *See* 19 U.S.C. § 1337(n)(1). Plaintiff's voluntary agreement to abide by the terms of the protective order enabled him to access the confidential information of the private litigants and ultimately to serve as a testifying expert in the Commission proceeding. At no point during the proceeding did plaintiff—or anyone else—question the validity or enforceability of the protective order.

But long after the underlying Commission proceeding had concluded, evidence emerged that plaintiff might have retained confidential information in violation of the terms of the protective order. After being confronted with this potential breach, plaintiff admitted that he had retained confidential information but argued for the first time that there was a defect in the appointment of the Commission's

administrative law judge (ALJ) that was not corrected until after the protective order was issued.  Plaintiff asserted that this rendered the protective order void and his voluntarily assumed obligation unenforceable.  Plaintiff then refused to continue to participate in the Commission's investigation and instead brought suit, challenging the enforceability of the protective order.  The district court accepted plaintiff's argument and entered an injunction that bars the Commission from taking any disciplinary action against plaintiff or even from finishing its still-incomplete investigation into whether and to what extent a breach occurred.  Moreover, the logic of the district court's opinion is not specific to the particular protective order at issue here and instead appears to cast doubt on the enforceability of protective orders issued in hundreds of other long-concluded Commission proceedings.

This Court should reverse that counterintuitive and troubling result for three independent reasons.  *First*, the Commission has not yet been allowed to complete its investigation of the suspected breach. Consistent with the familiar principle of administrative law that judicial review of agency enforcement proceedings is reserved until after

2

those proceedings have culminated in a final order, the district court should have dismissed the suit as premature. In nonetheless reaching the merits of plaintiff's challenge, the district court misconstrued a narrow exception to finality principles that is reserved for structural challenges to an agency's authority to act. Because plaintiff does not allege that the Commission itself is unconstitutionally structured or otherwise lacks authority to investigate mishandling of confidential business information produced in Commission proceedings, that exception is inapplicable and judicial review was premature.

*Second*, plaintiff is not entitled to relief on his Appointments Clause claim. Plaintiff analogizes himself to parties involuntarily subjected to coercive governmental power wielded by improperly appointed adjudicators. But the source of plaintiff's obligation to maintain the confidentiality of documents produced in Commission proceedings was not the protective order alone, which did not purport to bind plaintiff of its own force. Rather, plaintiff's obligation only commenced three months later, when he voluntarily signed an agreement to abide by the terms of that protective order. Other factors also distinguish this case from those in which courts have awarded

remedies based on Appointments Clause claims, including plaintiff's failure to raise any timely objection and the fact that he seeks complete immunity for his possible violations, not merely the opportunity to have his case heard by a properly appointed adjudicator.

*Third*, the district court committed plain legal error by granting plaintiff a permanent injunction without applying the familiar four-factor test for equitable relief. Having concluded that plaintiff would prevail on the merits of his claim, the court made only glancing acknowledgement of the public interest implications of the injunction and completely failed to undertake any balancing of the equities. That failure is particularly conspicuous because the potential harm to the public interest from the court's injunction is significant, jeopardizing the confidentiality of sensitive business records that private litigants have entrusted to the Commission—in both the proceeding in which plaintiff was an expert witness and hundreds of similarly situated proceedings—and potentially hampering the Commission's ability to discharge its statutory responsibilities in the future. The district court erred in disregarding these significant equitable considerations.

## STATEMENT OF JURISDICTION

Plaintiff invoked the district court's jurisdiction under 28 U.S.C. § 1331.  JA 13.  The district court granted summary judgment to the plaintiff and entered final judgment on May 5, 2023.  JA 229.  A timely notice of appeal was filed June 29, 2023.  JA 230.  This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.  Whether the district court erred in concluding that plaintiff's challenge to ongoing agency proceedings is presently justiciable.

2.  Whether the district court erred in concluding that plaintiff is entitled to relief on his Appointments Clause claim.

3.  Whether the district court erred as a matter of law in granting injunctive relief without applying the four-factor test for equitable relief.

## PERTINENT STATUTES AND REGULATIONS

Pertinent statutes and regulations are reproduced in the addendum to this brief.

5

## STATEMENT OF THE CASE

### A.    Statutory and Regulatory Background

**1.**  The U.S. International Trade Commission is an independent, nonpartisan agency composed of six Commissioners appointed by the President.  19 U.S.C. § 1330(a).  Congress charged the Commission with investigating "unfair methods of competition and unfair acts in the importation of articles" under the Tariff Act, as amended and now codified at 19 U.S.C. § 1337 (section 337).  As part of that mandate, the Commission often hears high-stakes patent disputes in which a patent owner seeks to have an alleged infringer's goods barred from importation into the United States.  These section 337 investigations take the form of adversarial, trial-like proceedings between the private parties, conducted in accordance with that statute and the Administrative Procedure Act (APA).

In practice, the initial phase of section 337 investigations is conducted before an ALJ.  After overseeing discovery and presiding at the evidentiary hearing, the ALJ issues an "initial determination" and makes recommendations as to remedy for any violations found.  19 C.F.R. § 210.42.  An ALJ's determinations and recommendations are

subject to review by the Commission, which issues a final determination and any remedial orders. *Id.* § 210.43. Any person adversely affected by the Commission's final determination may seek review directly in the Federal Circuit within 60 days of its issuance. 19 U.S.C. § 1337(c).

**2.** The adjudication of patent and trade disputes frequently requires consideration of highly sensitive information of private parties. Not only are the parties themselves generally required to disclose confidential technical and financial information during the course of a section 337 investigation, but discovery is also often sought from third parties, who may supply components or have licensing arrangements with either the complainant or respondent.

Congress recognized that the Commission would need to establish rules to safeguard confidential information produced in Commission proceedings. By statute, material "properly designated as confidential pursuant to Commission rules" may not be disclosed "except under a protective order issued under regulations of the Commission," absent the consent of the submitter. 19 U.S.C. § 1337(n)(1). The Commission has, in turn, adopted regulations defining "confidential business information" to include "trade secrets" as well as "other information of

7

commercial value" such that its disclosure "is likely to have the effect of either impairing the Commission's ability to obtain such information" or "causing substantial harm to the competitive position" of the entity submitting the information. 19 C.F.R. §§ 201.6(a)(1), 210.5(a) (adopting that definition for section 337 investigations).

The Commission has delegated to its ALJs its authority under 19 U.S.C. § 1337(n)(1) to issue a protective order covering the confidential business information submitted in the context of a particular investigation. 19 C.F.R. § 210.5(e)(1); *see also id.* § 210.34(a). This authority is routinely exercised. Indeed, confidential information is so integral to section 337 investigations that an administrative protective order is ordinarily the first order an ALJ issues upon being assigned to preside over an investigation.

The Commission's regulations also identify the potential sanctions for a breach of a protective order. Available sanctions include an official Commission reprimand, disqualification from participation in a pending investigation or practice before the Commission, referral to an appropriate licensing authority, or other non-monetary sanctions relevant to the conduct of the investigation, such as an adverse

8

inference determination.  *See* 19 C.F.R. § 210.34(c); *see also id.*
§ 210.33(b).

While a section 337 investigation is ongoing, the ALJ adjudicating
the investigation is responsible for overseeing the management of
confidential business information, including by enforcing the
Commission's prohibitions on disclosure of confidential business
information outside the terms of the protective order.  *See* 19 C.F.R.
§ 210.5(b)(1).  If a breach of a protective order is suspected while a
matter remains pending before an ALJ, the ALJ may investigate any
suspected breach and recommend sanctions to the Commission.  *Id.*
§ 210.34(c)(2).  After the matter is no longer before the ALJ, the
protective order retains its force, but the Commission itself handles the
investigation of any potential breach and makes sanctions
determinations in the first instance.  *Id.* § 210.34(c)(1).

**B.    The Appointments Clause**

The Appointments Clause of the Constitution prescribes the
method by which officers of the United States may be appointed.  *See*
U.S. Const. art. II, § 2, cl. 2.  As relevant here, subordinate officials

known as "inferior Officers" may, at Congress's direction, be appointed by "the Heads of Departments." *Id.*

Historically, Commission ALJs were appointed by the agency's chairman, as permitted by its organic statute. 19 U.S.C. § 1331(a)(1)(A)(i), (a)(1)(C). In March 2018, the full Commission ratified the appointments of the agency's ALJs. This ratification was made prior to the Supreme Court's decision in *Lucia v. SEC*, 138 S. Ct. 2044 (2018), which held that the ALJs of the Securities and Exchange Commission (SEC) are inferior officers for purposes of the Appointments Clause. *See also Free Enter. Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 512 (2010) (a multi-member body as a whole is the proper Head of Department for Appointments Clause purposes).

## C.    Factual Background and Prior Proceedings

**1.** The present appeal has its roots in a section 337 investigation that commenced in August 2017, known as the 1065 Investigation. *See* JA 88, 109-11. That investigation was initiated in response to Qualcomm Inc.'s allegations of patent infringement against Apple Inc. *See* JA 89-90. A third company, Intel Corp., was also involved as a non-

10

party because the accused Apple products were smartphones that contained certain Intel chips. Because Apple's smartphones were, at the time, the only smartphones made by any manufacturer that used chips other than those made by Qualcomm, the investigation raised competition concerns relevant to the Commission's duty to consider the public interest in determining whether the accused products should be excluded from importation. *See* 19 U.S.C. § 1337(d)(1), (f)(1).

The initial phase of the investigation was overseen by ALJ Thomas Pender. JA 80. The Commission's rules authorized ALJ Pender to take evidence and hear arguments on the public interest. 19 C.F.R. § 210.50(b). As is typical in such proceedings, one of the first orders ALJ Pender issued at the outset of the investigation was an administrative protective order. JA 34-47. ALJ Pender issued the protective order in August 2017—a few months prior to the full Commission's March 2018 ratification of the appointments of all its ALJs, including ALJ Pender.

The protective order, which followed the standard form for such orders issued in section 337 investigations, addressed the handling of confidential business information provided by the parties and non-party

11

participants for purposes of the investigation. It prohibited the sharing of confidential business information with, among others, "technical experts and their staff who are employed for the purposes of this litigation" unless such persons "shall have first read this order and shall have agreed, by letter filed with the Secretary of this Commission[] . . . to be bound by the terms thereof." JA 35-36, ¶¶ 3, 4. And the order also required individuals who received confidential business information during the 1065 Investigation to either return or destroy such information "[u]pon final termination of th[e] Investigation." JA 41, ¶ 14.

Plaintiff, who is the founder and sole owner of an economic consulting firm, was retained by Qualcomm to serve as an expert witness with respect to whether excluding Apple's products from the U.S. market would impair competition. JA 18, ¶ 36; JA 63. To facilitate that engagement, in November 2017 (three months after the protective order issued), plaintiff signed and filed an "Acknowledgement" agreeing to be bound by the terms of the protective order. JA 48; *see also* JA 36. In relevant part, the acknowledgment stated that plaintiff "ha[d] read the Protective Order (Order No. 1)

issued by [ALJ] Pender on August 10, 2017[,] . . . and hereby agree[d]: (1) To be bound by the terms of the Protective Order; (2) Not to reveal confidential business information (as that term is defined in the Protective Order) to anyone other than another person designated in paragraph 3 of the Protective Order; and (3) To utilize such confidential business information solely for purposes of this Investigation." JA 48. Plaintiff signed and submitted the acknowledgement without noting any objection to the ALJ's authority to enter the protective order.

The 1065 Investigation concluded in April 2019, when the Commission issued a final decision concluding that no asserted patent claim had been infringed. JA 93-94. Qualcomm and Apple subsequently entered a global settlement resolving various disputes, including those at issue in the 1065 Investigation. As a result, neither party sought judicial review of the Commission's final determination. The termination of the proceeding triggered the obligation of signatories to the protective order to destroy or return confidential information produced subject to that order. JA 41, ¶ 14.

**2.** By May 2022, after plaintiff submitted several requests under the Freedom of Information Act that cited a confidential document, the

Commission had become concerned that plaintiff might have retained certain confidential business information from the 1065 Investigation. *See* JA 49.  Accordingly, the Secretary to the Commission opened a formal investigation into plaintiff's potential breach of the protective order.  The Secretary sent plaintiff a letter of inquiry requesting that plaintiff submit an affidavit describing "the circumstances surrounding the possible breach."  JA 49-52.  In response, plaintiff submitted a letter from counsel making various legal arguments regarding the breach proceeding.  JA 53-56.  The then-Acting Secretary sent a second letter of inquiry requesting an affidavit.  JA 57-58.  Plaintiff then submitted a second letter from counsel, JA 59-61, along with an affidavit, JA 62-75.

In that affidavit, plaintiff confirmed that, "until recently," he had retained his entire case file from that investigation on his company's server and that he continued to retain some unspecified portion of the file on a laptop and in email records.  JA 67-68, ¶ 26.  In light of those admissions, the Acting Secretary sent plaintiff a third letter asking him to submit a further affidavit elaborating on the facts and circumstances surrounding both his prior and continued retention of records.  JA 76-78.

14

**3.**  Without responding to the Acting Secretary's third letter, plaintiff filed this suit in federal district court.  In his complaint, plaintiff alleged that the protective order was unenforceable due to an Appointments Clause defect and that, accordingly, the Commission could not investigate or discipline him for any breach of that order.[1]  JA 27-29 (Count I).  Plaintiff moved for a preliminary injunction, and the government moved for summary judgment.  *See* JA 207 & n.3.

The district court, treating the motion for a preliminary injunction as a motion for summary judgment, granted plaintiff's motion for summary judgment and denied the government's cross motion.  JA 207 & n.3, 228.  First, drawing on language from the Supreme Court's recent decision in *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023), the court concluded that plaintiff's claim was immediately justiciable because his challenge "concern[ed] the constitutionality of the sanctions proceeding itself."  JA 211, 212-13.  Second, the court reasoned that plaintiff's claim was neither untimely nor forfeited because, as a non-

---

[1] Plaintiff also alleged that the Commission's procedures limiting the form of his responses to its inquiries violated his Fifth Amendment right to due process.  JA 29-31 (Count II).  The district court did not reach this claim.

15

party to the 1065 Investigation, plaintiff was unable to raise an

objection to the ALJ's appointment while the proceedings were ongoing.

JA 218.  Separately, the court also concluded that, regardless of

whether plaintiff's challenge was timely, the de facto officer doctrine did

not bar relief because "[i]t applies only to some *non*-constitutional

appointments challenges."  JA 223.

As to remedy, the court concluded that plaintiff "is entitled to

relief from any 'adjudication tainted with an appointments violation.'"

JA 226 (quoting *Cody v. Kijakazi*, 48 F.4th 956, 962 (9th Cir. 2022)).

Because the ALJ "'lacked constitutional authority to do his job,'" the

court reasoned, "his actions in the investigation are 'void'," including

"the protective order that serves as the sole basis for the Commission's

sanctions proceeding."  JA 226 (first quoting from *Lucia*, 138 S. Ct. at

2050, and then quoting from *Collins v. Yellen*, 141 S. Ct. 1761, 1788

(2021)).  The court therefore "enjoin[ed] the Commission from using the

protective order" as a basis for proceedings against plaintiff.  JA 227.

Notably, the court issued its injunction without addressing the four-

factor test for injunctive relief.  *See Anatol Zukerman & Charles Krause*

16

*Reporting, LLC v. U.S. Postal Serv.* (*Zukerman*), 64 F.4th 1354, 1363-64
(D.C. Cir. 2023) (outlining the test).

## SUMMARY OF ARGUMENT

I.  The district court should have dismissed plaintiff's challenge as
premature.  The agency action plaintiff challenges—the Commission's
investigation into his potential breach of the protective order to which
he voluntarily agreed to be bound—was ongoing when plaintiff filed
suit.  Despite the familiar rule limiting judicial review while
administrative proceedings have not yet culminated in a final decision,
the district court erroneously concluded that plaintiff's suit was not
premature.

The district court's error rests on a misreading of *Axon Enterprise,
Inc. v. FTC*, 598 U.S. 175 (2023), which recognized a limited exception
to normal finality principles for suits challenging the structural
constitutional authority of an ongoing administrative proceeding.  But
that principle is inapplicable here: nowhere does plaintiff suggest that
the Commission itself is unconstitutionally structured, nor does he
argue that it lacks lawful authority to carry out investigations into
breaches of protective orders as a general matter.  Instead, plaintiff

17

challenges only the predicate of the specific proceeding against him—the protective order entered in the 1065 Investigation. As *Axon* itself reiterated, judicial review of such case-specific challenges must wait until the agency's own proceedings have concluded.

II. Even were this case presently justiciable, plaintiff would not be entitled to relief on his Appointments Clause claim. The Supreme Court has made relief available for parties who bring timely and meritorious Appointments Clause claims. *See Lucia v. SEC*, 138 S. Ct. 2044, 2055 (2018). But this case bears no resemblance to *Lucia*.

Plaintiff's affirmative and voluntary consent to be bound by the protective order readily amounts to forfeiture of any challenge to the legitimacy of the ALJ's authority to issue that order. *See Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 574 F.3d 748, 756 (D.C. Cir. 2009) (per curiam) (applying forfeiture to Appointments Clause claim). And this is not the "rare case" that would justify excusal of that forfeiture. *Id.* Because the agency has already ensured that any flaw in its ALJs' appointments has been corrected, plaintiff's claim presents no important or recurring question of law.

18

Nor is plaintiff's claim timely. The real object of plaintiff's challenge is the protective order itself, which was issued in the course of an agency proceeding that has long since concluded. Courts may treat such after-the-fact challenges to the legitimacy of an officer's appointment as untimely—and for good reason. *See Ryder v. United States*, 515 U.S. 177, 181-82 (1995) (discussing claims first raised on collateral review). The public interest in maintaining order and reliance interests created once such an officer's orders have become final weigh in favor of allowing the order to stand. Those principles are similarly reflected in the de facto officer doctrine, a remedial rule permitting courts to decline any belated invitation to invalidate the past acts of an improperly appointed officer. *See Phillips v. Payne*, 92 U.S. 130, 132 (1875). Having allowed the Commission and the private parties involved in the 1065 Investigation to rely on the validity of the protective order for more than three years, plaintiff cannot now seek to eviscerate that order on the basis of a claim he failed to raise while the proceeding was ongoing.

The relief the district court granted—completely voiding the protective order without any replacement—is also dramatically out of

19

step with the principles that the Supreme Court has invoked in designing Appointments Clause remedies. As the Court has explained, such remedies should be designed to incentivize litigants to identify Appointments Clause defects so that any flawed exercise of government authority can be quickly cured. *See Lucia*, 138 S. Ct. at 2055 n.5; *see also Ryder*, 515 U.S. at 183. But far from incentivizing prompt action, allowing the district court's injunction to stand would send future litigants a dangerous message: that waiting to bring an Appointments Clause challenge may result in a total release from even voluntarily assumed obligations rather than a mere do-over. Nothing in *Lucia* warrants such extraordinary relief.

III. The district court abused its discretion by granting a permanent injunction without first applying the standard four-factor test for equitable relief. *See eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391, 393-94 (2006). After concluding that plaintiff should prevail on the merits of his claim, the court issued the injunction without assessing the availability of remedies at law, the balance of hardships, or the public interest. That plain error alone is sufficient reason to vacate the injunction.

20

Moreover, consideration of the public interest is of particular importance here because the court's reasoning could equally apply to the many hundreds of other section 337 investigations conducted by the Commission's ALJs prior to the ratification of their appointments in March 2018. And the fact of the court's intervention also threatens to adversely affect future Commission investigations, which are made possible only by the willing participation of the private businesses whose confidential information is needed to conduct those investigations. The court's order jeopardizes that participation by calling into question the Commission's ability to protect such information. On the other side of the ledger, absent an injunction, plaintiff would be subjected to nothing more than a continued investigation into his possible breach of a voluntary promise.

## STANDARD OF REVIEW

This court reviews the grant or denial of summary judgment de novo. *Defenders of Wildlife v. Zinke*, 849 F.3d 1077, 1082 (D.C. Cir. 2017). A grant of permanent injunctive relief is reviewed for abuse of discretion. *Zukerman*, 64 F.4th 1354, 1361 (D.C. Cir. 2023).

21

## ARGUMENT

## I.    This Case Is Not Presently Justiciable.

Plaintiff brought suit to enjoin an ongoing investigation into whether he had violated a Commission protective order.  Because the Commission has not had an opportunity to reach a final determination regarding the alleged breach, plaintiff's suit was premature and should have been dismissed on that basis.

### A.    Judicial review is not available to consider the merits of an ongoing agency investigation.

There are few principles of administrative law more familiar than the rule that agency action generally is not judicially reviewable until it is complete.  Accordingly, a party subject to agency proceedings must wait for the agency to reach a final determination before seeking judicial review.  *See FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 239 (1980).  An agency's "preliminary" actions "should be reviewed in the same forum as the final order resolving the core issue." *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743 (1985).  Thus, in the ordinary case, when an agency initiates an enforcement action against a private party, that initial step is not reviewable unless and until it results in

22

some "legal force or practical effect" on that party. *Standard Oil*, 449 U.S. at 243.

The APA codifies that rule by providing that a "preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action." 5 U.S.C. § 704. The result is that the agency's initial complaint and underlying rationale for bringing enforcement proceedings are "subject to judicial review before the conclusion of administrative adjudication only if the issuance of the complaint was 'final agency action' or otherwise was 'directly reviewable' under . . . the APA." *Standard Oil*, 449 U.S. at 238. Because the APA "empowers a court of appeals to 'hold unlawful and set aside agency action'" not in accordance with law, courts may, once the agency proceedings become final, "review alleged unlawfulness in the issuance of a complaint." *Id.* at 245 (quoting 5 U.S.C. § 706). But that review must wait until the proceedings result in final action—even though those proceedings may later turn out to have been flawed at their inception.

Those same principles animate the doctrines of administrative exhaustion and prudential ripeness. *See Ticor Title Ins. Co. v. FTC*, 814

23

F.2d 731, 732 (D.C. Cir. 1987) (unanimously affirming dismissal despite one judge citing exhaustion, one citing ripeness, and one citing finality). As particularly relevant here, the doctrine of prudential ripeness provides that courts may decide to address issues based on their fitness for judicial review and the hardship to the parties of postponing that review. *See National Treasury Emps. Union v. United States*, 101 F.3d 1423, 1431 (D.C. Cir. 1996). As this Court recently reiterated, "[a] claim is premature and therefore unripe for judicial review if it depends on 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Saline Parents v. Garland*, 88 F.4th 298, 306 (D.C. Cir. 2023) (quoting *Trump v. New York*, 141 S. Ct. 530, 535 (2020) (per curiam)). In that sense, challenges to agency proceedings that have not yet resulted in final agency action are unripe because the consequences of those proceedings remain unclear.

The finality principle reflects the practical reality that postponing judicial review until agency proceedings are complete provides many benefits to both litigants and courts. "Judicial intervention into the agency process denies the agency an opportunity to correct its own mistakes and to apply its expertise." *Standard Oil*, 449 U.S. at 242

(citing *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975)). And allowing intervention at every step of agency proceedings would "also lead[] to piecemeal review which at the least is inefficient and upon completion of the agency process might prove to have been unnecessary." *Id.* at 241 (citing *McGee v. United States*, 402 U.S. 479, 484 (1971); *McKart v. United States*, 395 U.S. 185, 195 (1969)). Deferring judicial review until agency proceedings reach finality avoids those costs while ensuring that a reviewing court may ultimately hold the agency to account.

In contravention of these foundational principles, the district court granted plaintiff's motion to enjoin an ongoing Commission investigation into whether he had retained confidential information in violation of the terms of the protective order issued in the 1065 Investigation. At the time the district court's order arrested that investigation, the Commission had not reached any final decision or otherwise taken final action. Indeed, plaintiff does not dispute that the Commission has not yet even determined the full facts surrounding plaintiff's retention of confidential materials; considered plaintiff's legal arguments regarding acts to which he has admitted (*e.g.*, JA 59-61); nor decided whether any sanction should be imposed on plaintiff. There can

be no doubt that the district court proceeded with its review of plaintiff's claims in the absence of any final agency action and before the consequences of the investigation, if any, could be known.

In these circumstances, the rationales for limiting judicial review of an ongoing investigation apply with full force. Congress explicitly tasked the Commission with taking steps to protect the confidential business information disclosed in the course of investigations, including through the use and enforcement of protective orders. *See* 19 U.S.C. § 1337(n)(1). And, in practice, enforcement of the statutory and regulatory protections for confidential business information, including with respect to non-party participants in trade investigations, is well within the Commission's expertise. *See, e.g.,* Summary of Commission Practice Relating to Administrative Protective Orders, 87 Fed. Reg. 69,331, 69,337 (Nov. 18, 2022) (finding good cause to issue a warning letter to an economist who "was not a signatory to the [administrative protective order]" but "was, or should have been, aware of the requirements and limitations related to [administrative protective order] access"). By prematurely blocking the Commission's investigation into a potential mishandling of protected information, the

26

district court denied the Commission the opportunity to apply its expertise and carry out its statutory obligation to preserve confidentiality.

Moreover, it remains possible that judicial review of the Commission's actions may never be necessary. The district court's order blocked the Commission's investigation into plaintiff's potential mishandling of confidential information before the Commission had even reached a conclusion as to whether plaintiff had violated the terms of the protective order or the Commission's rules. Should the Commission ultimately conclude that no breach occurred or that no sanction is warranted, plaintiff may never need to seek judicial review. Should sanctions be imposed, nothing would prevent plaintiff from raising his Appointments Clause claim—along with any other challenge to any aspect of the proceedings—before a district court on direct review of that final agency action. Requiring plaintiff to wait and bring his Appointments Clause claim at that later date, if at all, would therefore serve the efficiency of the courts without depriving plaintiff of an opportunity for full review.

## B.    The *Axon* exception to ordinary finality requirements does not apply here.

In concluding that plaintiff's suit was not premature, the district court relied heavily on the Supreme Court's recent decision in *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023).  But *Axon* is inapposite, and the district court's reliance was misplaced.

In *Axon*, the Supreme Court generally reaffirmed *Standard Oil*'s core holding that even "'the expense and disruption' of 'protracted adjudicatory proceedings' on a claim do not justify immediate review" of an ongoing administrative adjudication.  *Axon*, 598 U.S. at 192 (quoting *Standard Oil*, 449 U.S. at 244).  That decision merely recognized a "limit[ed]" exception that allows for immediate judicial review in the narrow class of cases in which a respondent in an enforcement proceeding alleges that it is being "subject[ed] to an unconstitutionally structured decisionmaking process."  *Axon*, 598 U.S. at 191-92.  But because plaintiff here does not challenge the constitutionality of the Commission itself, or the Commission's general authority to investigate possible misuse of confidential information disclosed during Commission proceedings, *Axon* is inapplicable.

28

A review of the facts of *Axon* confirms that it involved circumstances quite different from those presented here. That case involved private party respondents in administrative enforcement proceedings that had been brought before the SEC and Federal Trade Commission, respectively. Respondents filed suits in federal district court seeking to have the enforcement proceedings enjoined on the ground that the ALJ conducting each proceeding was unconstitutionally insulated from removal by the President. The question before the Court was whether each agency's statutory scheme for administrative review, which generally provided for judicial review in the courts of appeals following the completion of the administrative adjudication, barred district courts from exercising jurisdiction over these structural constitutional challenges to the authority of the administrative adjudicators. *See Axon*, 598 U.S. at 185 (citing *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207 (1994)).

In addressing that question, the Court restated the ordinary rule that courts lack jurisdiction over claims Congress committed to agency adjudication through a statutory scheme for administrative review until after that agency process reaches finality. *Axon*, 598 U.S. at 185. That

is true even when a plaintiff objects to the proceedings against them on constitutional grounds. *Id.* at 187 (discussing *Elgin v. Department of Treasury*, 567 U.S. 1 (2012)). So long as the constitutional claim can be "meaningfully addressed" by judicial review of the agency's final determination, Congress may require the litigant to channel their claims through the agency first. *Elgin*, 567 U.S. at 9 (quoting *Thunder Basin*, 510 U.S. at 215).

The Court ultimately concluded that the *Axon* plaintiffs' claims fell into an exception to that ordinary channeling requirement for claims challenging "the structure or very existence of an agency" and thus asserting that "an agency is wielding authority unconstitutionally in all or a broad swath of its work." *Axon*, 598 U.S. at 189; *see also id.* at 187 (discussing *Free Enter. Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477 (2010); *Thunder Basin*, 510 U.S. 200). The *Axon* plaintiffs' claims were within that category because the plaintiffs challenged the ability of the agencies' ALJs to exercise authority over *any* case while insulated from removal. In such cases, the Court held, being haled before "an illegitimate decisionmaker" amounted to an injury independent from any adverse action that decisionmaker might

30

take.  *Id.* at 191.  That unique harm justified a departure from the ordinary rule requiring final agency action before federal courts could exercise jurisdiction.

This case, by contrast, "does not present a structural challenge to the Commission's authority."  JA 213.  Instead, the complaint alleges that the Commission's breach investigation is "predicated on an order issued" in a prior proceeding "by someone without constitutional authority" to do so.  JA 28, ¶ 88.  Under those circumstances, plaintiff cannot allege the unique injury recognized in *Axon* because he makes no assertion that the Commission itself is "an illegitimate decisionmaker."  *Axon*, 598 U.S. at 191.  Delaying review here would not deprive plaintiff of any "rights not to undergo" an unconstitutional agency proceeding.  *Id.* at 192 (analogizing that case to immunity doctrines protecting a "right[] 'not to stand trial'").

Plaintiff's challenge to the specific predicate of a particular agency investigation is precisely the type of claim to which ordinary finality requirements apply.  That the legal sufficiency of the agency's reasons for undertaking proceedings may not be reviewed until those proceedings conclude is unremarkable.  *See Standard Oil*, 449 U.S. at

31

238; *see also Arch Coal, Inc. v. Acosta*, 888 F.3d 493, 501 (D.C. Cir. 2018). And such review is correctly understood to provide appropriate relief under the circumstances of this case. Should a court ultimately conclude that the Commission imposed sanctions on legally insufficient grounds, that injury can be fully addressed by setting those sanctions aside.

*Axon* does not purport to disturb those principles in every instance in which a plaintiff asserts a constitutional claim. As a motions panel of this Court has recognized, "[n]othing in *Axon* holds that every 'nonfrivolous' constitutional objection to every agency proceeding, especially fact-bound as-applied claims to a particular exercise of agency jurisdiction, can bypass the congressional scheme established for judicial review." Order at 15, *Loma Linda-Inland Consortium for Healthcare Educ. v. NLRB*, No. 23-5096 (D.C. Cir. May 25, 2023) (citation omitted) (denying motion for injunction pending appeal). Indeed, *Axon* reaffirmed both *Elgin* and *Thunder Basin*, each of which concerned constitutional claims. Accordingly, there is no warrant to diverge here from the ordinary rule that plaintiff's challenge to the

predicate of the Commission's investigation must wait for judicial review until that administrative proceeding reaches finality.

## II.    Plaintiff Is Not Entitled To Relief On His Appointments Clause Claim.

The district court also erred in awarding plaintiff relief on the merits of his Appointments Clause claim.  The court reasoned that because the ALJ was not appointed by the Commission as a whole at the time he issued the protective order in the 1065 Investigation, the order was void and the proper remedy would be to enjoin the Commission from ever enforcing that protective order against the plaintiff.  The court believed that this result followed from *Lucia*, a case in which a party involuntarily haled before an improperly appointed adjudicator was awarded a new hearing on Appointments Clause grounds after having raised a "timely" objection, first before the agency and then on direct judicial review of the agency's decision.  *Lucia v. SEC*, 138 S. Ct. 2044, 2055 (2018).

This case bears no resemblance to *Lucia*.  Plaintiff here voluntarily elected to participate in the 1065 Investigation and, specifically, agreed to abide by the terms of the protective order as a condition of accessing confidential information to enable his work as an

33

expert witness; he raised no contemporaneous objection to the validity

of the protective order and only first asserted an Appointments Clause

challenge in a collateral attack mounted three years after the 1065

Investigation had concluded; and he sought a permanent bar on

enforcement of the protective order, not the mere do-over that was

awarded to the *Lucia* plaintiff.  For each of these reasons, plaintiff was

not entitled to prevail on the merits of his challenge.

### A.    Plaintiff forfeited any challenge to the validity of the protective order by voluntarily agreeing to be bound by its terms.

Appointments Clause claims, like other nonjurisdictional issues,

may be forfeited if not timely raised.  *See Freytag v. Commissioner*, 501

U.S. 868, 893-94 (1991) (Scalia, J., concurring in part and concurring in

the judgment) ("Appointments Clause claims, and other structural

constitutional claims, have no special entitlement to review.");

*Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 574 F.3d 748,

756 (D.C. Cir. 2009) (per curiam); *see also, e.g.*, *Island Creek Coal Co. v.*

*Wilkerson*, 910 F.3d 254, 256 (6th Cir. 2018) (same); *cf. Springsteen-*

*Abbott v. SEC*, 989 F.3d 4, 8 (D.C. Cir. 2021) (finding the plaintiff

administratively forfeited Appointments Clause challenge).  When

plaintiff signed an acknowledgment agreeing to be bound by the terms of the protective order in order to participate in the 1065 Investigation as a paid expert, he did so without noting any objection to the constitutional sufficiency of the ALJ's appointment. Such voluntary participation in an optional adjudicatory forum readily amounts to forfeiture—or even waiver—of any otherwise-available challenges to that forum's authority to make binding decisions with respect to those participants. *See Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 849 (1986) (holding that party who selected an administrative forum waived any right to demand adjudication in an Article III court). Nothing in the circumstances of this case merits the exercise of this court's discretion to reach the merits of the forfeited claim.

**1.** Plaintiff chose to accept a professional engagement as an expert witness and then affirmatively and voluntarily accepted his obligations under the protective order without objection. The Federal Circuit has twice dismissed as forfeited Appointments Clause challenges to the validity of proceedings in an administrative forum brought by individuals who had elected that forum in the first instance. *See Ciena Corp. v. Oyster Optics, LLC*, 958 F.3d 1157, 1161 (Fed. Cir.

35

2020); *Valve Corp. v. Ironburg Inventions Ltd.*, 8 F.4th 1364, 1379 (Fed. Cir. 2021).  When a plaintiff company had "affirmatively sought a ruling from the [Patent Trial and Appeal] Board members" and had been "content to have the assigned Board judges adjudicate its invalidity challenges until the Board ruled against it," it could not subsequently assert an Appointments Clause claim.  *Ciena Corp.*, 958 F.3d at 1159.

By the same logic, plaintiff forfeited his Appointments Clause claim by electing to participate in the adjudication of claims before the ALJ.  In doing so, he voluntarily signed an agreement affirmatively recognizing that he "ha[d] read the Protective Order . . . and hereby agree[d] . . . [t]o be bound by the terms of the Protective Order" and "[n]ot to reveal confidential business information . . . to anyone other than" those to whom the order permitted access.  JA 48.  And as evidenced by his willingness to sign that statement, plaintiff was "content to have the assigned [ALJ]" exercise authority over the 1065 Investigation "until" the Commission attempted to investigate his potential violation of that agreement.  *Ciena Corp.*, 958 F.3d at 1159.

The district court attempted to distinguish *Ciena* on two grounds. First, it stated that "agreeing to testify is materially different from

invoking a forum and 'affirmatively seeking a ruling from the' Commission." JA 220 (alteration omitted). But that fact cuts against plaintiff. If anything, more solicitude would be warranted for a party that initiates an administrative proceeding to avail itself of a statutory entitlement to administrative review. *Cf. Carr v. Saul*, 593 U.S. 83, 88-89 (2021) (suggesting Social Security claimants may bring Appointments Clause claims to administrative adjudicators or on judicial review). By contrast, plaintiff appeared before the Commission not to vindicate any right but only in order to earn a fee based on a professional engagement. In this sense, his participation in the proceeding was even more "voluntary" than that of a party who merely selects one forum over another. *Schor*, 478 U.S. at 849; *Ciena Corp.*, 958 F.3d at 1161.

Second, the district court concluded that because plaintiff, unlike the plaintiff in *Ciena Corp.*, was not a party to the agency proceedings, he had not "strategically slept on his rights" by "waiting to challenge an adjudicator's authority until after receiving an adverse decision." JA 220. But plaintiff did not, as the district court supposed, raise "his Appointments Clause challenge as soon as his rights were put at issue."

37

*Id.*  Though plaintiff was not a party to the 1065 Investigation itself, he was also not merely "a third-party witness."  JA 222.  He was a retained expert for one of the parties and, crucially, a signatory to the protective order.  That order impacted his rights to possess and disclose information from the moment he signed the acknowledgement agreeing to be bound by its terms.

Plaintiff also did not raise his objection at the earliest opportunity.  If plaintiff had concerns about the validity of the order to which he agreed to be bound, he could have declined to sign the acknowledgment.  By signing it, he induced the private parties and the Commission to believe that he would adhere to the terms of the protective order.  He also could have raised any concerns—even by informal letter—to the ALJ, the parties, or the Commission.  Nor would any objection have been futile.  As the district court itself recognized, if any party or participant had raised the Appointments Clause issue before the ALJ, it could have been addressed: the ALJ—whose appointment was ratified by the full Commission partway into the proceedings—could have reissued the protective order and recommitted participants to its terms.  JA 202.

Whether strategic or not, plaintiff's failure to raise an objection until years after the administrative proceedings reached finality cost the agency the opportunity to respond to the arguments he now invokes. That failure should not be rewarded with a release from obligations plaintiff voluntarily accepted in exchange for the opportunity to serve as a paid expert witness.

**2.** The district court concluded that it would be appropriate to excuse plaintiff's forfeiture (JA 221-22), but this too was error. The district court seemed to believe that the exercise of discretion to address the merits of forfeited Appointments Clause claims is common, but this Court's precedent—and those of many other circuits—are directly to the contrary. *See, e.g.*, *Springsteen-Abbott*, 989 F.3d at 8; *Intercollegiate Broad. Sys., Inc.*, 574 F.3d at 756; *Island Creek Coal*, 910 F.3d at 256 (collecting cases declining to address untimely constitutional challenges).

And this is not the "rare case" in which this court should exercise its discretion to review a forfeited claim. *Intercollegiate Broad. Sys., Inc.*, 574 F.3d at 756. Notably, the cases identified by the district court in which a court reviewed forfeited Appointments Clause claims

involved direct review of the allegedly tainted adjudication.  *See e.g.,*
*Freytag*, 501 U.S. at 878-79; *Jones Bros., Inc. v. Secretary of Labor*, 898
F.3d 669, 677-78 (6th Cir. 2018).  In contrast, plaintiff here allowed the
challenged order to sit in repose for several years.  That the issue is of
renewed relevance to plaintiff is hardly justification for forgiving such a
lapse.  *See Intercollegiate Broad. Sys., Inc.*, 574 F.3d at 756 (refusing to
excuse forfeiture when an Appointments Clause claim "simply had not
occurred" to a party's counsel sooner).

    Moreover, the Commission here has already taken action by
ratifying the appointments of its existing ALJs and changing its
appointment procedures for new ALJs.  Accordingly, the case does not
present an important or recurring question.  *See Ciena Corp.*, 958 F.3d
at 1161 (noting the court had previously addressed a forfeited
Appointments Clause claim "because of [the issue's] importance to
litigants, and, importantly, because we had not considered the question
previously" (citing *Arthrex, Inc. v. Smith & Nephew, Inc.*, 941 F.3d 1320,
1326-27 (Fed. Cir. 2019))).  That the agency took such "action in fixing
the problem prospectively" weighs strongly "against [the court]

exercising [its] discretion to address" a forfeited Appointments Clause claim. *In re DBC*, 545 F.3d 1373, 1381 (Fed. Cir. 2008).

**B.    Plaintiff's claim is not timely.**

A plaintiff with a meritorious Appointments Clause challenge is entitled to relief only when he "makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicate[d] his case." *Lucia*, 138 S. Ct. at 2055 (quoting *Ryder v. United States*, 515 U.S. 177, 182 (1995)). Although there is no hard-and-fast rule for the point in time at which an Appointments Clause challenge becomes untimely, certain limiting principles apply. For example, where proceedings before an agency are insufficiently adversarial, such a claim may be timely even if raised for the first time on direct judicial review. *See Carr*, 593 U.S. at 95; *see also Sandoz Inc. v. Becerra*, 57 F.4th 272, 278 (D.C. Cir. 2023) ("[W]hether a court should impose an issue exhaustion requirement 'depends on the degree to which the analogy to normal adversarial litigation applies in a particular administrative proceeding.'" (quoting *Carr*, 593 U.S. at 88)). However, such challenges generally cannot be brought for the first time on collateral review. *See Ryder*, 515 U.S. at 181 (discussing *Ball v.*

41

*United States*, 140 U.S. 118, 128-29 (1891); *McDowell v. United States*, 159 U.S. 596, 598 (1895)).

Those principles limiting the time for raising Appointments Clause challenges mirror the centuries-old remedial rule known as the de facto officer doctrine.  Under that doctrine, a court need not redress an improper appointment by invalidating the appointee's past acts.  Instead, the court may treat the "acts of an officer *de facto*" as "valid and binding," even if—at the time he acted—he was not "an officer *de jure*."  *Phillips v. Payne*, 92 U.S. 130, 132 (1875).  So long as the office claimed properly exists, the past acts of an officer whose appointment is legally flawed are "to be respected and obeyed."  *See Norton v. Shelby County*, 118 U.S. 425, 441 (1886).  That doctrine "is founded upon considerations of policy and necessity, for the protection of the public and individuals whose interests may be affected thereby."  *Id.*  In order to ensure "the orderly functioning of the government despite technical defects in title to office," the doctrine guarantees the public's reliance on official acts undertaken by such officers before their appointments were brought into doubt.  *Ryder*, 515 U.S. at 180-81 (quotation marks omitted).

Under these principles, plaintiff's attack on the validity of the protective order issued during the 1065 Investigation is untimely. That proceeding has long reached repose. The Commission issued a final determination, reversing the ALJ's initial determination, on April 1, 2019. JA 93-94. Neither party sought judicial review within the 60 days provided by statute. *Cf. Carr*, 593 U.S. at 86-88 (noting the Social Security claimants sought direct review of agency action in federal district court). And if plaintiff's collateral attack were deemed timely in this case, it would call into question whether any of the hundreds of protective orders issued by Commission ALJs prior to March 2018 would be enforceable as to non-party participants in similar proceedings. That is precisely the kind of after-the-fact disruption to "the orderly functioning of the government" that timeliness requirements and the de facto officer doctrine are meant to prevent. *Ryder*, 515 U.S. at 180-81 (quotation marks omitted).

The district court erroneously concluded that the de facto officer doctrine cannot apply to bar relief for *constitutional* challenges to the validity of an appointment. *See* JA 223 (stating that the doctrine "applies only to some *non*-constitutional appointments challenges").

43

But the Supreme Court has explicitly noted that "an officer *de facto*" may be one whose appointment turns out to have been unconstitutional. *Norton*, 118 U.S. at 444 (quotation marks omitted) (noting the doctrine applies "only to the invalidity, irregularity, or unconstitutionality of the mode by which the party was appointed . . . to a legally existing office"). Indeed, the Court went on to define an officer de facto to include one who exercises authority "under color of . . . an appointment by or pursuant to a public[,] unconstitutional law, before the same is adjudged to be such." *Id.* at 446 (quotation marks omitted). Although "[t]he law authorizing the appointment [may be] declared unconstitutional, [yet] the acts of [an officer appointed under the law] were deemed valid as those of an officer *de facto*." *Id.* at 447.

While the Supreme Court has indicated that it is "not inclined to extend" its precedents applying the de facto officer doctrine, it has not overturned them. *See Ryder*, 515 U.S. at 184. Instead, the Court's recent cases declining to bar retroactive relief under the doctrine have consistently cabined that decision within the context of timely and direct requests for review. *See id.* at 182 ("Unlike the defendants in *Ball*, *McDowell*, and *Ward*, petitioner raised his objection to the judges'

44

titles before those very judges and prior to their action on his case.");

*Lucia*, 138 S. Ct. at 2055 ("Lucia made . . . a timely challenge: He

contested the validity of Judge Elliot's appointment before the

Commission, and continued pressing that claim in the Court of Appeals

and this Court.").  Where, as here, a litigant raises an Appointments

Clause challenge for the first time in a collateral action years after the

proceedings in question have settled into repose, principles of timeliness

and the de facto officer doctrine counsel strongly against relief.

## C.    Relief would not serve the purposes of Appointments Clause remedies.

In granting remedies for meritorious and timely Appointments

Clause claims, the Supreme Court has invoked two principal

considerations.  First, the Court has sought to "cure the constitutional

error" that deprived a plaintiff of an opportunity to have his case heard

by a duly appointed officer.  *Lucia*, 138 S. Ct. at 2055.  That is why, for

example, the subject of an agency enforcement proceeding who prevails

on an Appointments Clause claim is entitled to a new hearing before a

different, properly appointed officer, even if the officer who originally

heard the claim had subsequently received a constitutional

appointment.  *Id.*  Second, the Court has recognized that the

45

availability of such relief creates an incentive to timely "raise

Appointments Clause challenges with respect to questionable . . .

appointments." *Ryder,* 515 U.S. at 183.  Resolution of those claims

ensures that any constitutional flaw in appointments is corrected and

that, going forward, authority will be wielded by properly appointed

officers.

   Neither of those considerations supports a grant of relief to

plaintiff here.  First, unlike the plaintiffs in *Lucia,* plaintiff here was

not deprived of the opportunity to have his case heard by a

constitutionally appointed adjudicator.  ALJ Pender did not adjudicate

plaintiff's rights, and ALJ Pender's authority over plaintiff is

attributable only to plaintiff's voluntary decision to pursue a paid

opportunity to serve as an expert witness.  And, correspondingly,

plaintiff seeks a different remedy from what was awarded in *Lucia.*

Plaintiff does not seek the opportunity to have his case heard by a

constitutionally appointed adjudicator but, rather, asks to be

permanently relieved of all of his voluntarily assumed duties under the

protective order.  The district court's grant of that request represents a

dangerous and radical expansion of Appointments Clause remedies beyond anything approved in *Lucia*.

Second, granting relief in these circumstances would not serve the Court's interest in incentivizing timely challenges to constitutionally flawed appointments in future. Not only is plaintiff's challenge untimely relative to the conclusion of the 1065 Investigation, it also comes years after the full Commission ratified the appointments of all of the agency's ALJs. *See* JA 85-86. Indeed, that ratification occurred even before the 1065 Investigation had concluded. Because no alleged constitutional flaw remains unremedied, there is no public interest in incentivizing plaintiff's belated challenge.

The district court's approach also perversely incentivizes strategic *silence* regarding potential Appointments Clause defects. Had plaintiff raised a timely objection or even filed suit while the 1065 Investigation was ongoing, the usual forms of relief could have been applied: the ALJ could have reissued the protective order once his appointment had been ratified or the entire investigation could have been reassigned to a new and duly appointed ALJ. But because plaintiff stayed silent, the district court concluded that he is entitled to the remedial windfall of

47

remaining forever free from any obligation to destroy or return the confidential information he received from his participation in the 1065 investigation.  Even if the plaintiff here did not intentionally sit on his claim, this Court should not endorse an approach that would reward so-called "sandbagging"—the practice of strategically declining to seek timely relief on an Appointments Clause claim.  *See Freytag*, 501 U.S. at 895 (Scalia, J., concurring in part and concurring in the judgment); *Joseph Forrester Trucking v. Director, Office of Workers' Comp. Programs*, 987 F.3d 581, 592 (6th Cir. 2021); *Edd Potter Coal Co. v. Director, Office of Workers' Comp. Programs*, 39 F.4th 202, 212 (4th Cir. 2022).

Awarding relief here threatens to upend the balance of incentives and remedies crafted by the Supreme Court.  Nothing in *Lucia* justifies that result.

## III.   The District Court Committed Legal Error In Granting Injunctive Relief Without Undertaking Equitable Balancing.

The district court further erred in entering an injunction without even taking cognizance of the significant ways in which its order is contrary to the rights of third parties and the public interest.

48

**A.    The district court's failure to address the four-part framework for grants of equitable relief constitutes an abuse of discretion.**

Injunctive relief is a matter of equitable discretion and "does not follow from success on the merits." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 32 (2008). Before a court may grant such relief, it must first consider whether plaintiff has satisfied the traditional four-factor test. *Zukerman*, 64 F.4th 1354, 1364 (D.C. Cir. 2023). "According to well-established principles of equity, a plaintiff seeking a permanent injunction . . . must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). When the government is the defendant, factors 3 and 4 merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Failure to apply the test is legal error. *See eBay*, 547 U.S. at 391, 393-94. And the party seeking the injunction bears the burden of persuasion. *Winter*, 555 U.S. at 20.

49

Here, the district court did not even mention the four-factor test before permanently enjoining the Commission's investigation into plaintiff's retention of confidential information. Having concluded that plaintiff would prevail on the merits, the court took no account of the three remaining factors. For example, outside of its erroneous discussion of *Axon*, *see* JA 212-13, the order contains no mention of the sufficiency of remedies available at law.

Perhaps most egregiously, rather than assess the balance of hardships and impact of its intervention on the public interest, the court stated that "[i]f any broader reliance interests are affected in this case, the Commission is to blame" for failing to take preemptive action. JA 227. But the test for injunctive relief is not a blame game. Even after a plaintiff has prevailed on the merits, the public interest must be considered.

Such consideration is particularly essential in the context of this case. As detailed below, the confidential information most immediately placed at risk by the district court's injunction barring enforcement of the protective order is that of the private businesses involved in the 1065 Investigation. Those entities are not parties to this litigation, and

their reliance interests in the continued enforceability of the protective

order were not directly represented.  Nevertheless, the four-factor test

required the court to consider those interests as part of the broader

public interest implicated by any injunction.  Its failure to do so is, in

and of itself, reversable error.

### B.  The balance of equities and public interest in this case strongly favor the government.

Even had the district court attempted a full equitable analysis, it

would have abused its discretion in issuing an injunction here because

the balance of equities and the public interest weigh decisively against

injunctive relief.  The potential consequences of the district court's

injunction extend far beyond this particular case.  Most directly, the

court's ruling strongly suggests that the Commission would be unable to

enforce the protective order against other non-party participants in the

1065 Investigation.  For Qualcomm, Apple, and Intel—the companies

whose confidential business information was disclosed as part of that

investigation—that outcome poses a significant threat.  Any of the

expert witnesses, outside counsel, or e-discovery vendors who obtained

confidential information in connection with those proceedings could now

51

view themselves as free to retain, use, and disclose such information with impunity.

The same risks will also be felt by the thousands of private businesses that participated in Commission proceedings prior to the March 2018 ratification of the appointments of the Commission's ALJs. Like the parties involved in the 1065 Investigation, those parties all relied on the validity of the protective orders issued in their proceedings to facilitate the exchange and review of confidential information. That includes third-party companies, like Intel, who were neither complainants nor respondents in Commission proceedings, but whose licensing or other business arrangements with a party to the proceeding meant their confidential business information was necessarily relevant to the adjudication. Should the district court's ruling stand, every non-party participant in any pre-2018 investigation might understand itself to be free to disclose any retained confidential information without fear of sanctions. The Commission estimates that more than one thousand such proceedings and protective orders would be affected.

And the ramifications of the district court's injunction could well extend to future investigations undertaken by the Commission's ALJs.

52

As Congress recognized, trust in the confidentiality of investigations is essential to the Commission's efficacy in enforcing the law through adjudication of trade disputes. 19 U.S.C. § 1331(n). The district court's order rendering a protective order "void," JA 226 (quotation marks omitted), years after the conclusion of one such investigation, leaving the companies involved with no assurances of continued confidentiality, could significantly chill participation in such investigations going forward. That result would seriously undermine Congress's goal of providing a specialized forum for resolving such disputes in an administrative context.

Finally, any equitable analysis must also account for the lack of hardship to plaintiff. Absent an injunction, plaintiff would suffer no more than the consequences of having voluntarily agreed to abide by the terms of the protective order: an investigation of his suspected failure to honor that pledge. Plaintiff apparently accepted that condition as a tolerable burden in exchange for the opportunity to be hired as an expert witness in the 1065 Investigation. Having received the benefits of that participation—both access to confidential business information and significant fees—he cannot claim meaningful injury

from the enforcement of that condition. Moreover, because the agency has already taken action to ensure that its ALJ are constitutionally compliant, there is no risk of ongoing or recurrent violations absent injunctive relief. The balance of hardships accordingly weighs strongly against the district court's grant of injunctive relief here.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be reversed and the permanent injunction should be vacated.

Respectfully submitted,

BRIAN M. BOYNTON
   *Principal Deputy Assistant*
    *Attorney General*

JOSHUA M. SALZMAN

 *s/ Anna M. Stapleton*
ANNA M. STAPLETON
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7213*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-3511*
  *Anna.M.Stapleton@usdoj.gov*

January 2024

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 10,024 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Century Schoolbook 14-point font, a proportionally spaced typeface.

*/s/ Anna M. Stapleton*
ANNA M. STAPLETON
Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system.

*/s/ Anna M. Stapleton*
ANNA M. STAPLETON
Attorney

**ADDENDUM**

## TABLE OF CONTENTS

19 U.S.C. § 1337 ........................................................................ A1

19 C.F.R. § 210.5 ...................................................................... A12

19 C.F.R. § 210.34 .................................................................... A15

## 19 U.S.C. § 1337

## § 1337. Unfair practices in import trade

## (a) Unlawful activities; covered industries; definitions

**(1)** Subject to paragraph (2), the following are unlawful, and when found by the Commission to exist shall be dealt with, in addition to any other provision of law, as provided in this section:

**(A)** Unfair methods of competition and unfair acts in the importation of articles (other than articles provided for in subparagraphs (B), (C), (D), and (E)) into the United States, or in the sale of such articles by the owner, importer, or consignee, the threat or effect of which is--

  **(i)** to destroy or substantially injure an industry in the United States;

  **(ii)** to prevent the establishment of such an industry; or

  **(iii)** to restrain or monopolize trade and commerce in the United States.

**(B)** The importation into the United States, the sale for importation, or the sale within the United States after importation by the owner, importer, or consignee, of articles that--

  **(i)** infringe a valid and enforceable United States patent or a valid and enforceable United States copyright registered under Title 17; or

  **(ii)** are made, produced, processed, or mined under, or by means of, a process covered by the claims of a valid and enforceable United States patent.

**(C)** The importation into the United States, the sale for importation, or the sale within the United States after importation by the owner, importer, or consignee, of articles that infringe a valid and enforceable United States trademark registered under the Trademark Act of 1946.

**(D)** The importation into the United States, the sale for importation, or the sale within the United States after importation by the owner, importer, or consignee, of a

A1

semiconductor chip product in a manner that constitutes infringement of a mask work registered under chapter 9 of Title 17.

**(E)** The importation into the United States, the sale for importation, or the sale within the United States after importation by the owner, importer, or consigner, of an article that constitutes infringement of the exclusive rights in a design protected under chapter 13 of Title 17.

**(2)** Subparagraphs (B), (C), (D), and (E) of paragraph (1) apply only if an industry in the United States, relating to the articles protected by the patent, copyright, trademark, mask work, or design concerned, exists or is in the process of being established.

**(3)** For purposes of paragraph (2), an industry in the United States shall be considered to exist if there is in the United States, with respect to the articles protected by the patent, copyright, trademark, mask work, or design concerned--

**(A)** significant investment in plant and equipment;

**(B)** significant employment of labor or capital; or

**(C)** substantial investment in its exploitation, including engineering, research and development, or licensing.

**(4)** For the purposes of this section, the phrase "owner, importer, or consignee" includes any agent of the owner, importer, or consignee.

**(b) Investigation of violations by Commission**

**(1)** The Commission shall investigate any alleged violation of this section on complaint under oath or upon its initiative. Upon commencing any such investigation, the Commission shall publish notice thereof in the Federal Register. The Commission shall conclude any such investigation and make its determination under this section at the earliest practicable time after the date of publication of notice of such investigation. To promote expeditious adjudication, the Commission shall, within 45 days after an investigation is initiated, establish a target date for its final determination.

A2

**(2)** During the course of each investigation under this section, the Commission shall consult with, and seek advice and information from, the Department of Health and Human Services, the Department of Justice, the Federal Trade Commission, and such other departments and agencies as it considers appropriate.

**(3)** Whenever, in the course of an investigation under this section, the Commission has reason to believe, based on information before it, that a matter, in whole or in part, may come within the purview of part II of subtitle IV of this chapter, it shall promptly notify the Secretary of Commerce so that such action may be taken as is otherwise authorized by such part II. If the Commission has reason to believe that the matter before it (A) is based solely on alleged acts and effects which are within the purview of section 1671 or 1673 of this title, or (B) relates to an alleged copyright infringement with respect to which action is prohibited by section 1008 of Title 17, the Commission shall terminate, or not institute, any investigation into the matter. If the Commission has reason to believe the matter before it is based in part on alleged acts and effects which are within the purview of section 1671 or 1673 of this title, and in part on alleged acts and effects which may, independently from or in conjunction with those within the purview of such section, establish a basis for relief under this section, then it may institute or continue an investigation into the matter. If the Commission notifies the Secretary or the administering authority (as defined in section 1677(1) of this title) with respect to a matter under this paragraph, the Commission may suspend its investigation during the time the matter is before the Secretary or administering authority for final decision. Any final decision by the administering authority under section 1671 or 1673 of this title with respect to the matter within such section 1671 or 1673 of this title of which the Commission has notified the Secretary or administering authority shall be conclusive upon the Commission with respect to the issue of less-than-fair-value sales or subsidization and the matters necessary for such decision.

## (c) Determinations; review

The Commission shall determine, with respect to each investigation conducted by it under this section, whether or not there is a violation of

this section, except that the Commission may, by issuing a consent order or on the basis of an agreement between the private parties to the investigation, including an agreement to present the matter for arbitration, terminate any such investigation, in whole or in part, without making such a determination. Each determination under subsection (d) or (e) shall be made on the record after notice and opportunity for a hearing in conformity with the provisions of subchapter II of chapter 5 of Title 5. All legal and equitable defenses may be presented in all cases. A respondent may raise any counterclaim in a manner prescribed by the Commission. Immediately after a counterclaim is received by the Commission, the respondent raising such counterclaim shall file a notice of removal with a United States district court in which venue for any of the counterclaims raised by the party would exist under section 1391 of Title 28. Any counterclaim raised pursuant to this section shall relate back to the date of the original complaint in the proceeding before the Commission. Action on such counterclaim shall not delay or affect the proceeding under this section, including the legal and equitable defenses that may be raised under this subsection. Any person adversely affected by a final determination of the Commission under subsection (d), (e), (f), or (g) may appeal such determination, within 60 days after the determination becomes final, to the United States Court of Appeals for the Federal Circuit for review in accordance with chapter 7 of Title 5. Notwithstanding the foregoing provisions of this subsection, Commission determinations under subsections (d), (e), (f), and (g) with respect to its findings on the public health and welfare, competitive conditions in the United States economy, the production of like or directly competitive articles in the United States, and United States consumers, the amount and nature of bond, or the appropriate remedy shall be reviewable in accordance with section 706 of Title 5. Determinations by the Commission under subsections (e), (f), and (j) with respect to forfeiture of bonds and under subsection (h) with respect to the imposition of sanctions for abuse of discovery or abuse of process shall also be reviewable in accordance with section 706 of Title 5.

**(d) Exclusion of articles from entry**

    **(1)** If the Commission determines, as a result of an investigation under this section, that there is a violation of this section, it shall

direct that the articles concerned, imported by any person violating the provision of this section, be excluded from entry into the United States, unless, after considering the effect of such exclusion upon the public health and welfare, competitive conditions in the United States economy, the production of like or directly competitive articles in the United States, and United States consumers, it finds that such articles should not be excluded from entry. The Commission shall notify the Secretary of the Treasury of its action under this subsection directing such exclusion from entry, and upon receipt of such notice, the Secretary shall, through the proper officers, refuse such entry.

**(2)** The authority of the Commission to order an exclusion from entry of articles shall be limited to persons determined by the Commission to be violating this section unless the Commission determines that--

**(A)** a general exclusion from entry of articles is necessary to prevent circumvention of an exclusion order limited to products of named persons; or

**(B)** there is a pattern of violation of this section and it is difficult to identify the source of infringing products.

**(e) Exclusion of articles from entry during investigation except under bond; procedures applicable; preliminary relief**

**(1)** If, during the course of an investigation under this section, the Commission determines that there is reason to believe that there is a violation of this section, it may direct that the articles concerned, imported by any person with respect to whom there is reason to believe that such person is violating this section, be excluded from entry into the United States, unless, after considering the effect of such exclusion upon the public health and welfare, competitive conditions in the United States economy, the production of like or directly competitive articles in the United States, and United States consumers, it finds that such articles should not be excluded from entry. The Commission shall notify the Secretary of the Treasury of its action under this subsection directing such exclusion from entry, and upon receipt of such notice, the Secretary shall, through the proper officers, refuse such entry, except that such articles shall be

A5

entitled to entry under bond prescribed by the Secretary in an amount determined by the Commission to be sufficient to protect the complainant from any injury. If the Commission later determines that the respondent has violated the provisions of this section, the bond may be forfeited to the complainant.

**(2)** A complainant may petition the Commission for the issuance of an order under this subsection. The Commission shall make a determination with regard to such petition by no later than the 90th day after the date on which the Commission's notice of investigation is published in the Federal Register. The Commission may extend the 90-day period for an additional 60 days in a case it designates as a more complicated case. The Commission shall publish in the Federal Register its reasons why it designated the case as being more complicated. The Commission may require the complainant to post a bond as a prerequisite to the issuance of an order under this subsection. If the Commission later determines that the respondent has not violated the provisions of this section, the bond may be forfeited to the respondent.

**(3)** The Commission may grant preliminary relief under this subsection or subsection (f) to the same extent as preliminary injunctions and temporary restraining orders may be granted under the Federal Rules of Civil Procedure.

**(4)** The Commission shall prescribe the terms and conditions under which bonds may be forfeited under paragraphs (1) and (2).

## **(f) Cease and desist orders; civil penalty for violation of orders**

**(1)** In addition to, or in lieu of, taking action under subsection (d) or (e), the Commission may issue and cause to be served on any person violating this section, or believed to be violating this section, as the case may be, an order directing such person to cease and desist from engaging in the unfair methods or acts involved, unless after considering the effect of such order upon the public health and welfare, competitive conditions in the United States economy, the production of like or directly competitive articles in the United States, and United States consumers, it finds that such order should not be issued. The Commission may at any time, upon such notice and in such manner as it deems proper, modify or revoke any such

order, and, in the case of a revocation, may take action under subsection (d) or (e), as the case may be. If a temporary cease and desist order is issued in addition to, or in lieu of, an exclusion order under subsection (e), the Commission may require the complainant to post a bond, in an amount determined by the Commission to be sufficient to protect the respondent from any injury, as a prerequisite to the issuance of an order under this subsection. If the Commission later determines that the respondent has not violated the provisions of this section, the bond may be forfeited to the respondent. The Commission shall prescribe the terms and conditions under which the bonds may be forfeited under this paragraph.

**(2)** Any person who violates an order issued by the Commission under paragraph (1) after it has become final shall forfeit and pay to the United States a civil penalty for each day on which an importation of articles, or their sale, occurs in violation of the order of not more than the greater of $100,000 or twice the domestic value of the articles entered or sold on such day in violation of the order. Such penalty shall accrue to the United States and may be recovered for the United States in a civil action brought by the Commission in the Federal District Court for the District of Columbia or for the district in which the violation occurs. In such actions, the United States district courts may issue mandatory injunctions incorporating the relief sought by the Commission as they deem appropriate in the enforcement of such final orders of the Commission.

## (g) Exclusion from entry or cease and desist order; conditions and procedures applicable

**(1)** If--

**(A)** a complaint is filed against a person under this section;

**(B)** the complaint and a notice of investigation are served on the person;

**(C)** the person fails to respond to the complaint and notice or otherwise fails to appear to answer the complaint and notice;

**(D)** the person fails to show good cause why the person should not be found in default; and

A7

**(E)** the complainant seeks relief limited solely to that person;

the Commission shall presume the facts alleged in the complaint to be true and shall, upon request, issue an exclusion from entry or a cease and desist order, or both, limited to that person unless, after considering the effect of such exclusion or order upon the public health and welfare, competitive conditions in the United States economy, the production of like or directly competitive articles in the United States, and United States consumers, the Commission finds that such exclusion or order should not be issued.

**(2)** In addition to the authority of the Commission to issue a general exclusion from entry of articles when a respondent appears to contest an investigation concerning a violation of the provisions of this section, a general exclusion from entry of articles, regardless of the source or importer of the articles, may be issued if--

**(A)** no person appears to contest an investigation concerning a violation of the provisions of this section,

**(B)** such a violation is established by substantial, reliable, and probative evidence, and

**(C)** the requirements of subsection (d)(2) are met.

## (h) Sanctions for abuse of discovery and abuse of process

The Commission may by rule prescribe sanctions for abuse of discovery and abuse of process to the extent authorized by Rule 11 and Rule 37 of the Federal Rules of Civil Procedure.

## (i) Forfeiture

**(1)** In addition to taking action under subsection (d), the Commission may issue an order providing that any article imported in violation of the provisions of this section be seized and forfeited to the United States if--

**(A)** the owner, importer, or consignee of the article previously attempted to import the article into the United States;

**(B)** the article was previously denied entry into the United States by reason of an order issued under subsection (d); and

**(C)** upon such previous denial of entry, the Secretary of the Treasury provided the owner, importer, or consignee of the article written notice of--

  **(i)** such order, and

  **(ii)** the seizure and forfeiture that would result from any further attempt to import the article into the United States.

**(2)** The Commission shall notify the Secretary of the Treasury of any order issued under this subsection and, upon receipt of such notice, the Secretary of the Treasury shall enforce such order in accordance with the provisions of this section.

**(3)** Upon the attempted entry of articles subject to an order issued under this subsection, the Secretary of the Treasury shall immediately notify all ports of entry of the attempted importation and shall identify the persons notified under paragraph (1)(C).

**(4)** The Secretary of the Treasury shall provide--

  **(A)** the written notice described in paragraph (1)(C) to the owner, importer, or consignee of any article that is denied entry into the United States by reason of an order issued under subsection (d); and

  **(B)** a copy of such written notice to the Commission.

## (j) Referral to President

**(1)** If the Commission determines that there is a violation of this section, or that, for purposes of subsection (e), there is reason to believe that there is such a violation, it shall--

  **(A)** publish such determination in the Federal Register, and

  **(B)** transmit to the President a copy of such determination and the action taken under subsection (d), (e), (f), (g), or (i), with respect thereto, together with the record upon which such determination is based.

**(2)** If, before the close of the 60-day period beginning on the day after the day on which he receives a copy of such determination, the President, for policy reasons, disapproves such determination and notifies the Commission of his disapproval, then, effective on the

A9

date of such notice, such determination and the action taken under subsection (d), (e), (f), (g), or (i) with respect thereto shall have no force or effect.

**(3)** Subject to the provisions of paragraph (2), such determination shall, except for purposes of subsection (c), be effective upon publication thereof in the Federal Register, and the action taken under subsection (d), (e), (f), (g), or (i), with respect thereto shall be effective as provided in such subsections, except that articles directed to be excluded from entry under subsection (d) or subject to a cease and desist order under subsection (f) shall, until such determination becomes final, be entitled to entry under bond prescribed by the Secretary in an amount determined by the Commission to be sufficient to protect the complainant from any injury. If the determination becomes final, the bond may be forfeited to the complainant. The Commission shall prescribe the terms and conditions under which bonds may be forfeited under this paragraph.

**(4)** If the President does not disapprove such determination within such 60-day period, or if he notifies the Commission before the close of such period that he approves such determination, then, for purposes of paragraph (3) and subsection (c) such determination shall become final on the day after the close of such period or the day on which the President notifies the Commission of his approval, as the case may be.

## (k) Period of effectiveness; termination of violation or modification or rescission of exclusion or order

**(1)** Except as provided in subsections (f) and (j), any exclusion from entry or order under this section shall continue in effect until the Commission finds, and in the case of exclusion from entry notifies the Secretary of the Treasury, that the conditions which led to such exclusion from entry or order no longer exist.

**(2)** If any person who has previously been found by the Commission to be in violation of this section petitions the Commission for a determination that the petitioner is no longer in violation of this section or for a modification or rescission of an exclusion from entry or order under subsection (d), (e), (f), (g), or (i)--

A10

**(A)** the burden of proof in any proceeding before the Commission regarding such petition shall be on the petitioner; and

**(B)** relief may be granted by the Commission with respect to such petition--

**(i)** on the basis of new evidence or evidence that could not have been presented at the prior proceeding, or

**(ii)** on grounds which would permit relief from a judgment or order under the Federal Rules of Civil Procedure.

## (l) Importation by or for United States

Any exclusion from entry or order under subsection (d), (e), (f), (g), or (i), in cases based on a proceeding involving a patent, copyright, mask work, or design under subsection (a)(1), shall not apply to any articles imported by and for the use of the United States, or imported for, and to be used for, the United States with the authorization or consent of the Government. Whenever any article would have been excluded from entry or would not have been entered pursuant to the provisions of such subsections but for the operation of this subsection, an owner of the patent, copyright, mask work, or design adversely affected shall be entitled to reasonable and entire compensation in an action before the United States Court of Federal Claims pursuant to the procedures of section 1498 of Title 28.

## (m) "United States" defined

For purposes of this section and sections 1338 and 1340 of this title, the term "United States" means the customs territory of the United States as defined in general note 2 of the Harmonized Tariff Schedule of the United States.

## (n) Disclosure of confidential information

**(1)** Information submitted to the Commission or exchanged among the parties in connection with proceedings under this section which is properly designated as confidential pursuant to Commission rules may not be disclosed (except under a protective order issued under regulations of the Commission which authorizes limited disclosure of such information) to any person (other than a person described in paragraph (2)) without the consent of the person submitting it.

**(2)** Notwithstanding the prohibition contained in paragraph (1), information referred to in that paragraph may be disclosed to--

**(A)** an officer or employee of the Commission who is directly concerned with--

**(i)** carrying out the investigation or related proceeding in connection with which the information is submitted,

**(ii)** the administration of a bond posted pursuant to subsection (e), (f), or (j),

**(iii)** the administration or enforcement of an exclusion order issued pursuant to subsection (d), (e), or (g), a cease and desist order issued pursuant to subsection (f), or a consent order issued pursuant to subsection (c),

**(iv)** proceedings for the modification or rescission of a temporary or permanent order issued under subsection (d), (e), (f), (g), or (i), or a consent order issued under this section, or

**(v)** maintaining the administrative record of the investigation or related proceeding,

**(B)** an officer or employee of the United States Government who is directly involved in the review under subsection (j), or

**(C)** an officer or employee of the United States Customs Service who is directly involved in administering an exclusion from entry under subsection (d), (e), or (g) resulting from the investigation or related proceeding in connection with which the information is submitted.

## 19 C.F.R. § 210.5

## § 210.5. Confidential business information.

(a) Definition and submission. Confidential business information shall be defined and identified in accordance with § 201.6(a) and (c) of this chapter. Unless the Commission, the administrative law judge, or another section of this part states otherwise, confidential business information shall be submitted in accordance with § 201.6(b) of this chapter. In the case of a complaint, any supplement to the complaint,

A12

and a motion for temporary relief filed under this part, the number of nonconfidential copies shall be prescribed by § 210.8(a) of this part.

(b) Restrictions on disclosure. Information submitted to the Commission or exchanged among the parties in connection with an investigation or a related proceeding under this part, which is properly designated confidential under paragraph (a) of this section and § 201.6(a) of this chapter, may not be disclosed to anyone other than the following persons without the consent of the submitter:

(1) Persons who are granted access to confidential information under § 210.39(a) or a protective order issued pursuant to § 210.34(a);

(2) An officer or employee of the Commission who is directly concerned with—

(i) Carrying out or maintaining the records of the investigation or related proceeding for which the information was submitted;

(ii) The administration of a bond posted pursuant to subsection (e), (f), or (j) of section 337 of the Tariff Act of 1930;

(iii) The administration or enforcement of an exclusion order issued pursuant to subsection (d), (e), or (g), a cease and desist order issued pursuant to subsection (f), or a consent order issued pursuant to subsection (c) of section 337 of the Tariff Act of 1930; or

(iv) Proceedings for the modification or rescission of a temporary or permanent order issued under subsection (d), (e), (f), (g), or (i) of section 337 of the Tariff Act of 1930, or a consent order issued under section 337 of the Tariff Act of 1930;

(3) An officer or employee of the United States Government who is directly involved in a review conducted pursuant to section 337(j) of the Tariff Act of 1930; or

(4) An officer or employee of the United States Customs Service who is directly involved in administering an exclusion from entry under section 337 (d), (e), or (g) of the Tariff Act of 1930 resulting from the investigation or related proceeding in connection with which the information was submitted.

A13

(c) Transmission of certain records to district court. Notwithstanding paragraph (b) of this section, confidential business information may be transmitted to a district court and be admissible in a civil action, subject to such protective order as the district court determines necessary, pursuant to 28 U.S.C. 1659.

(d) Confidentiality determinations in preinstitution proceedings. After a complaint is filed under section 337 of the Tariff Act of 1930 and before an investigation is instituted by the Commission, confidential business information designated confidential by the supplier shall be submitted in accordance with § 201.6(b) of this chapter. The Secretary shall decide, in accordance with § 201.6(d) of this chapter, whether the information is entitled to confidential treatment. Appeals from the ruling of the Secretary shall be made to the Commission as set forth in § 201.6(e) and (f) of this chapter.

(e) Confidentiality determinations in investigations and other related proceedings.

(1) If an investigation is instituted or if a related proceeding is assigned to an administrative law judge, the administrative law judge shall set the ground rules for the designation, submission, and handling of information designated confidential by the submitter. When requested to do so, the administrative law judge shall decide whether information in a document addressed to the administrative law judge, or to be exchanged among the parties while the administrative law judge is presiding, is entitled to confidential treatment. The administrative law judge shall also decide, with respect to all orders, initial determinations, or other documents issued by the administrative law judge, whether information designated confidential by the supplier is entitled to confidential treatment. The supplier of the information or the person seeking the information may, with leave of the administrative law judge, request an appeal to the Commission of the administrative law judge's unfavorable ruling on this issue, under § 210.24(b)(2).

(2) The Commission may continue protective orders issued by the administrative law judge, amend or revoke those orders, or issue new ones. All submissions addressed to the Commission that contain information covered by an existing protective order will be given

A14

confidential treatment. (See also § 210.72.) New information that is submitted to the Commission, designated confidential by the supplier, and not covered by an existing protective order must be submitted to the Secretary with a request for confidential treatment in accordance with § 201.6(b) and (c) of this chapter. The Secretary shall decide, in accordance with § 201.6(d) of this chapter, whether the information is entitled to confidential treatment. Appeals from the ruling of the Secretary shall be made to the Commission as provided in § 201.6(e) and (f) of this chapter. The Commission shall decide, with respect to all orders, notices, opinions, and other documents issued by or on behalf of the Commission, whether information designated confidential by the supplier is entitled to confidential treatment.

(f) When the Commission or the administrative law judge issues a confidential version of an order, initial determination, opinion, or other document, the Commission, or the presiding administrative law judge if the administrative law judge has issued the confidential version, shall issue any public version of the document within 30 days, unless good cause exists to extend the deadline. An administrative law judge or the Commission may extend this time by order. Upon request by the Commission, or the administrative law judge if the administrative law judge has issued the confidential version, parties must provide support in the record for their claim of confidentiality, pursuant § 201.6 of this chapter and § 210.4 of this subpart for any proposed redactions that parties may submit to the Commission or the administrative law judge for the preparation of any public version.

## 19 C.F.R. § 210.34

### § 210.34. Protective orders; reporting requirement; sanctions and other actions.

(a) Issuance of protective order. Upon motion by a party or by the person from whom discovery is sought or by the administrative law judge on his own initiative, and for good cause shown, the administrative law judge may make any order that may appear necessary and appropriate for the protection of the public interest or that justice requires to protect a party or person from annoyance,

A15

embarrassment, oppression, or undue burden or expense, including one or more of the following:

(1) That discovery not be had;

(2) That the discovery may be had only on specified terms and conditions, including a designation of the time or place;

(3) That discovery may be had only by a method of discovery other than that selected by the party seeking discovery;

(4) That certain matters not be inquired into, or that the scope of discovery be limited to certain matters;

(5) That discovery be conducted with no one present except persons designated by the administrative law judge;

(6) That a deposition, after being sealed, be opened only by order of the Commission or the administrative law judge;

(7) That a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way; and

(8) That the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the Commission or the administrative law judge. If the motion for a protective order is denied, in whole or in part, the Commission or the administrative law judge may, on such terms and conditions as are just, order that any party or person provide or permit discovery. The Commission also may, upon motion or sua sponte, issue protective orders or may continue or amend a protective order issued by the administrative law judge.

(b) Unauthorized disclosure, loss, or theft of information. If confidential business information submitted in accordance with the terms of a protective order is disclosed to any person other than in a manner authorized by the protective order, lost, or stolen, the party responsible for the disclosure, or subject to the loss or theft, must immediately bring all pertinent facts relating to such incident to the attention of the submitter of the information and the administrative law judge or the Commission, and, without prejudice to other rights and remedies of the submitter of the information, make every effort to prevent further

A16

mishandling of such information by the party or the recipient of such information.

(c) Violation of protective order.

(1) The issue of whether sanctions should be imposed may be raised on a motion by a party, the administrative law judge's own motion, or the Commission's own initiative in accordance with § 210.25(a)(2). Parties, including the party that identifies an alleged breach or makes a motion for sanctions, and the Commission shall treat the identity of the alleged breacher as confidential business information unless the Commission issues a public sanction. The identity of the alleged breacher means the name of any individual against whom allegations are made. The Commission and the administrative law judge may permit the parties to file written submissions or present oral argument on the issues of the alleged violation of the protective order and sanctions.

(2) If the breach occurs while the investigation is before an administrative law judge, any determination on sanctions of the type enumerated in paragraphs (c)(3)(i) through (iv) of this section shall be in the form of a recommended determination. The Commission may then consider both the recommended determination and any related orders in making a determination on sanctions. When the motion is addressed to the administrative law judge for sanctions of the type enumerated in paragraph (c)(3)(v) of this section, he shall grant or deny a motion by issuing an order.

(3) Any individual who has agreed to be bound by the terms of a protective order issued pursuant to paragraph (a) of this section, and who is determined to have violated the terms of the protective order, may be subject to one or more of the following:

(i) An official reprimand by the Commission;

(ii) Disqualification from or limitation of further participation in a pending investigation;

(iii) Temporary or permanent disqualification from practicing in any capacity before the Commission pursuant to § 201.15(a) of this chapter;

A17

(iv) Referral of the facts underlying the violation to the appropriate licensing authority in the jurisdiction in which the individual is licensed to practice;

(v) Sanctions of the sort enumerated in § 210.33(b), or such other action as may be appropriate.

(d) Reporting requirement. Each person who is subject to a protective order issued pursuant to paragraph (a) of this section shall report in writing to the Commission immediately upon learning that confidential business information disclosed to him or her pursuant to the protective order is the subject of:

(1) A subpoena;

(2) A court or an administrative order (other than an order of a court reviewing a Commission decision);

(3) A discovery request;

(4) An agreement; or

(5) Any other written request, if the request or order seeks disclosure, by him or any other person, of the subject confidential business information to a person who is not, or may not be, permitted access to that information pursuant to either a Commission protective order or § 210.5(b).

Note to paragraph (d): This reporting requirement applies only to requests and orders for disclosure made for use of confidential business information in non–Commission proceedings.

(e) Sanctions and other actions. After providing notice and an opportunity to comment, the Commission may impose a sanction upon any person who willfully fails to comply with paragraph (d) of this section, or it may take other action.

A18