# IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

J. GREGORY SIDAK,

Plaintiff-Appellee,

v.

UNITED STATES INTERNATIONAL TRADE COMMISSION; DAVID
S. JOHANSON, RHONDA K. SCHMIDTLEIN, JASON E. KEARNS,
RANDOLPH J. STAYIN, AMY A. KARPEL, in their official capacities
as Commissioners of the U.S. International Trade Commission,

Defendants-Appellants.

On Appeal from the United States District Court
for the District of Columbia

**REPLY BRIEF FOR APPELLANTS**

BRIAN M. BOYNTON
  *Principal Deputy Assistant
  Attorney General*

JOSHUA M. SALZMAN
ANNA M. STAPLETON
  *Attorneys, Appellate Staff
  Civil Division, Room 7213
  U.S. Department of Justice
  950 Pennsylvania Avenue NW
  Washington, DC 20530
  (202) 514-3511*

# TABLE OF CONTENTS

**Page**

GLOSSARY

INTRODUCTION AND SUMMARY OF ARGUMENT ...........................1

ARGUMENT .......................................................4

I.    The District Court's Intervention Was Premature. ........................4

II.    Plaintiff Is Not Entitled To Relief...................................11

        A.    Plaintiff forfeited his challenge to the ALJ's authority by voluntarily agreeing to be bound by the protective order. ...................................................12

        B.    Plaintiff's collateral challenge to the validity of the protective order is untimely.................................18

        C.    Relief at this late stage would disincentivize timely Appointments Clause challenges.........................23

III.    The Injunction Is Founded On Reversible Error...........................26

CONCLUSION ..................................................34

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:**                                                           **Page(s)**

*Anatol Zukerman & Charles Krause Reporting, LLC v.*
*U.S. Postal Serv.,*
64 F.4th 1354 (D.C. Cir. 2023) ...................................................... 28, 32

*Axon Enter., Inc. v. FTC,*
598 U.S. 175 (2023) ...................................................................... 3, 7, 8

*Calcutt v. Federal Deposit Ins. Corp.,*
37 F.4th 293 (6th Cir. 2022), *cert. granted, opinion rev'd,*
598 U.S. 623 (2023) ................................................................................ 19

*Carr v. Saul,*
593 U.S. 83 (2021) ......................................................................... 13, 20

*Ciena Corp. v. Oyster Optics, LLC,*
958 F.3d 1157 (Fed. Cir. 2020) ...................................................... 13, 17

*Cirko ex rel. Cirko v. Commissioner of Soc. Sec.,*
948 F.3d 148 (3d Cir. 2020) ................................................................. 18

*Commodity Futures Trading Comm'n v. Schor,*
478 U.S. 833 (1986) ....................................................................... 12, 13

*eBay Inc. v. MercExchange, LLC,*
547 U.S. 388 (2006) ....................................................................... 26, 27

*Elgin v. Department of Treasury,*
567 U.S. 1 (2012) ..................................................................................... 8

*Freytag v. Commissioner,*
501 U.S. 868 (1991) ................................................................. 13, 16, 17

*FTC v. Standard Oil Co. of Cal.,*
449 U.S. 232 (1980) ........................................................................... 5, 9

*Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*,
574 F.3d 748 (D.C. Cir. 2009) ............................................................. 16

*Lucia v. SEC*,
585 U.S. 237 (2018) ......................................................................... 18, 23

*National Treasury Emps. Union v. United States*,
101 F.3d 1423 (D.C. Cir. 1996) ............................................................. 5

*Norton v. Shelby County*,
118 U.S. 425 (1886) ........................................................................... 19

*Phillips v. Payne*,
92 U.S. 130 (1875) ............................................................................ 19

*Ryder v. United States*,
515 U.S. 177 (1995) ........................................................................ 18, 23

*Saline Parents v. Garland*,
88 F.4th 298 (D.C. Cir. 2023) .............................................................. 6

*Seila Law LLC v. Consumer Fin. Prot. Bureau*,
140 S. Ct. 2183 (2020) ......................................................................... 8

*Springsteen-Abbott v. SEC*,
989 F.3d 4 (D.C. Cir. 2021) ................................................................ 20

*Winter v. Natural Res. Def. Council, Inc.*,
555 U.S. 7 (2008) .............................................................................. 27

**Statutes:**

19 U.S.C. § 1331(a)(1)(A) ..................................................................... 26

19 U.S.C. § 1331(a)(1)(C) ..................................................................... 26

19 U.S.C. § 1337(c) ............................................................................. 19

19 U.S.C. § 1337(n) ............................................................. 9, 10

19 U.S.C. § 1337(n)(1) ..................................................... 2, 6, 14

**Other Authorities:**

Letter from Steven G. Calabresi to Chairman,
  Int'l Trade Comm'n (Feb. 6, 2019),
  https://edis.usitc.gov/external/attachment/
  666044-1389495.pdf ............................................................. 23

Officer of the Solicitor Gen., U.S. Dep't of Justice,
  *Guidance on Administrative Law Judges After*
  *Lucia v. SEC (S. Ct.)* (July 2018),
  https://perma.cc/M8JD-BEUS ............................................. 31

Order, *Loma Linda-Inland Consortium for Healthcare Educ.*
  *v. NLRB*, No. 23-5096 (D.C. Cir. May 25, 2023) ................... 8

# GLOSSARY

ALJ                             Administrative law judge

# INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff-appellee J. Gregory Sidak does not dispute that he *voluntarily* signed an agreement "[t]o be bound by the terms of [a] Protective Order" issued in an International Trade Commission (Commission) proceeding arising from a patent dispute between private parties (the 1065 Investigation). JA 48. He appears to recognize that his obligation to abide by the terms of the protective order is traceable to this agreement, signed months after the protective order was issued, and not to the protective order alone. Resp. Br. 44-45. He likewise does not dispute that this obligation took effect immediately upon his signing of the acknowledgment. Yet, plaintiff admits he expressed no contemporaneous doubts about the validity of the protective order or the Commission's authority to enforce its requirements against him.

Plaintiff remained silent for the duration of the 1065 Investigation. The termination of that investigation triggered a term in the protective order obligating plaintiff to return or destroy the confidential materials that he had received. But plaintiff did not challenge that requirement or give notice that he viewed this affirmative obligation as unenforceable.

Only years later, after the Commission inquired whether he had improperly retained confidential business information, did plaintiff belatedly contend that the protective order was void. He bases that contention on an allegation that the protective order was issued by an administrative law judge (ALJ) who had not yet been properly appointed. This alleged defect, plaintiff now insists, precludes the Commission from holding plaintiff to his voluntarily assumed obligation or from fulfilling its responsibility to safeguard confidential information produced in a Commission proceeding. *See* 19 U.S.C. § 1337(n)(1).

Plaintiff has already acknowledged that he "retained his entire case file," JA 112; *see also* JA 67-68, ¶ 26, in apparent violation of his obligation to return or destroy all confidential information at the conclusion of the 1065 Investigation, JA 41, ¶ 14. But the Commission has not yet had an opportunity to make a final determination as to whether any breach occurred. Plaintiff persuaded the district court to permanently enjoin the Commission from even completing its investigation, let alone deciding whether any sanction would be warranted.

As our opening brief explained, that injunction suffers from three independent defects. First, judicial intervention was premature. Plaintiff wrongly insists that this case falls within a narrow exception to the established prohibition on judicial review while agency proceedings remain ongoing. But that exception applies only when the plaintiff alleges that he is being subjected to an "unconstitutionally structured decisionmaking process." *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 192 (2023). That is not plaintiff's allegation here. By his own description, plaintiff believes only that the specific predicate for the Commission's investigation of him (the protective order) is invalid. He does not challenge the constitutional structure of the decisionmaker (the Commission) itself. *Axon* is thus inapposite, and the ordinary rule barring judicial review while agency proceedings are ongoing controls.

Second, the district court's order upends recognized limits on the availability of remedies for Appointments Clause claims. Plaintiff forfeited any challenge to the enforceability of the protective order by voluntarily agreeing to abide by its terms, and, in any case, his challenge is untimely. Plaintiff's assertion that his status as a party only to the protective order, rather than to the 1065 Investigation itself,

somehow entitles him to mount a collateral challenge to that order years after the conclusion of the proceeding in which it was issued is unsupported by any precedent. And plaintiff does not deny that the district court rewarded his delay with a remedial windfall—a permanent injunction against enforcement of the protective order—beyond the mere "do-over" that has been awarded to litigants who prevailed on Appointments Clause claims in other cases.

Third, the district court committed legal error—and so necessarily abused its discretion—by entering a permanent injunction without addressing the four-factor test for equitable relief. The court did not account for the impact of its order on the private businesses that have entrusted the Commission with their confidential information. And it failed to show due regard for the Commission's need to protect such information, which is crucial to its functions.

## ARGUMENT

## I. The District Court's Intervention Was Premature.

1. Plaintiff does not appear to dispute that, as a general matter, the Commission's investigation of a possible breach of a protective order must be permitted to conclude before the subject of that proceeding can

4

seek judicial relief. After all, it is a fundamental tenet of administrative law that a party subject to agency proceedings must wait for the agency to reach a final determination before seeking judicial review. *See FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 239 (1980). Neither an agency's decision to initiate a proceeding nor the legal basis of that decision is judicially reviewable unless and until that proceeding results in some "legal force or practical effect" on the party. *Id.* at 243.

Plaintiff does not claim that the Commission has taken final action in this case. On the contrary, the Commission has not yet even determined the full facts surrounding plaintiff's retention of confidential materials, much less what consequence (if any) should follow. *See* Opening Br. 25. Under normal principles of administrative law, this suit should therefore have been dismissed as unripe. *See National Treasury Emps. Union v. United States*, 101 F.3d 1423, 1431 (D.C. Cir. 1996).

The principles animating the ripeness doctrine are entirely applicable here. The court's intervention deprived the Commission of the opportunity to apply its expertise in the protection of confidential business information disclosed during section 337 investigations, a duty

rooted in an explicit Congressional command. *See* 19 U.S.C.
§ 1337(n)(1). Far from being "aimed solely at enforcing a concededly
unconstitutional order," Resp. Br. 19, the Commission's investigation
into potential mishandling of confidential information disclosed during
a Commission proceeding is an essential part of its obligation to
safeguard confidential information of the parties and third-party
participants in any section 337 investigation.

Moreover, the district court's failure to dismiss plaintiff's claims
resulted in judicial review that may turn out to have been completely
unnecessary. The Commission's investigation is not, as plaintiff says, a
"sanctions proceeding." Resp. Br. 2. The investigation may ultimately
result in no finding of wrongdoing, or otherwise conclude that no
sanctions are appropriate. Indeed, plaintiff has argued to the
Commission that his conduct was authorized under the protective order.
*See* JA 53-54, 62-63. Should the Commission accept plaintiff's
argument, plaintiff would have no need to seek judicial review. *See*
*Saline Parents v. Garland*, 88 F.4th 298, 306 (D.C. Cir. 2023) (stating
that claims are unripe when they depend on "contingent future events
that . . . may not occur at all" (internal quotation marks omitted)).

2. Plaintiff's contrary argument depends entirely on his effort to analogize his claim to those considered by the Supreme Court in *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175, 191 (2023). As we explained in our opening brief (at 28-33), that analogy does not withstand scrutiny.

*Axon* generally reaffirmed the finality principal established in *Standard Oil* while recognizing a limited exception. That exception permits immediate judicial review only when the respondent in an agency enforcement proceeding alleges that it is being "subject[ed] to an unconstitutionally structured decisionmaking process." *Axon*, 598 U.S. at 191-92. But the circumstances that made the *Axon* plaintiffs' claims immediately reviewable are not present here. In *Axon*, the "parties object[ed] to the [defendant agencies'] power generally, not to anything particular about how that power was wielded." *Id.* at 193. This case, by contrast, "does not present a structural challenge to the Commission's authority." JA 213 (district court opinion).

At bottom, plaintiff's claim is that the proceeding against him is fatally flawed because the protective order was not properly promulgated. That claim does not speak to the structural validity of the administrative proceeding plaintiff wants enjoined, nor to the lawful

authority of the Commission to investigate possible breaches of protective orders.  And because plaintiff does not allege that he has been haled before an unconstitutionally structured decisionmaker, he suffers no cognizable "here-and-now" injury from having to complete the adjudicative proceeding.  *Axon*, 598 U.S. at 191 (quoting *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2196 (2020)).  Absent such an injury, there is no warrant for an exception to the ordinary finality rule.

The mere fact that the asserted defect in the protective order is constitutional, rather than statutory, does not alter the analysis.  As a motions panel of this Court has recognized, *Axon* did not categorically exempt constitutional claims from general finality principles.  Order at 15, *Loma Linda-Inland Consortium for Healthcare Educ. v. NLRB*, No. 23-5096 (D.C. Cir. May 25, 2023).  Quite the opposite: *Axon* reaffirmed that immediate judicial review is unavailable even for claims asserting that an agency proceeding enforces an unconstitutional rule or law.  *See Axon*, 598 U.S. at 187 (discussing *Elgin v. Department of Treasury*, 567 U.S. 1 (2012) (judicial review not immediately available for challenge to ongoing administrative proceeding on ground that it sought to enforce

an allegedly unconstitutional draft registration requirement)); *see also*
Resp. Br. 22 (conceding the *Axon* does not apply to all constitutional
claims). If, for example, plaintiff wished to challenge the
constitutionality of the statutory requirement that confidential
information submitted in Commission proceedings be disclosed only
subject to a protective order, 19 U.S.C. § 1337(n), he would need to wait
until the conclusion of the Commission's investigation. His
constitutional challenge to the protective order itself is no different.

Plaintiff insists that what sets his case apart is that, in his view,
the Commission's investigation is "an illegitimate proceeding, wholly
independent of the merits." Resp. Br. 22. But respondents in
administrative proceedings often dispute that the particular agency
action against them has a legitimate basis. In *Standard Oil*, for
example, the respondents in an administrative proceeding asserted that
the agency had failed to satisfy the statutory prerequisite for issuing an
administrative complaint and had acted solely in response to political
pressure. *Standard Oil*, 449 U.S. at 235-36. Yet the Supreme Court
said that a "claim of illegality in the issuance of the complaint" must
"abide review of the final order." *Id.* at 246.

For similar reasons, plaintiff misses the mark in arguing that further factual development will not impact the resolution of his challenge.  Resp. Br. 24.  Litigants in administrative (and judicial) proceedings often believe they have threshold legal defenses that should be dispositive.  But even potentially case-determinative arguments are not entitled to piecemeal judicial review.  Plaintiff's view that further record development might not be required to decide his Appointments Clause claim does little to distinguish this case from countless others.

In any event, plaintiff overstates the extent to which his Appointments Clause claim is unrelated to the as-yet-undetermined facts of his case.  Those facts matter because the scope of the Commission's obligation to protect the confidential information submitted by private businesses during section 337 trade investigations is not limited to the enforcement of protective orders.  *See* 19 U.S.C. § 1337(n).  A court reviewing plaintiff's entitlement to relief from any final decision of the Commission would benefit from a developed record detailing plaintiff's precise conduct and how that conduct did or did not comport with the Commission's regulations governing the treatment of confidential business information.  Indeed, plaintiff himself seems to

think it material to represent to this Court that he did not disclose any confidential business information to third parties. Resp. Br. 57. Doing so would violate § 1337(n) and Commission regulations as well as the terms of the protective order. But the Commission has not yet had the opportunity to determine whether plaintiff's factual representation is accurate.

Ultimately, *Axon* does not support the proposition that an alleged flaw in the specific protective order issued in the 1065 Investigation should nullify the Commission's ability to investigate a suspected mishandling of confidential business information. Instead, *Axon* recognizes the distinction between structural challenges to administrative adjudicators and challenges to the predicate for an individual proceeding. Because this case falls in the latter category, the challenge should be dismissed as unripe.

## II. Plaintiff Is Not Entitled To Relief.

Plaintiff also fails to show entitlement to relief on the merits. He voluntarily agreed to adhere to the terms of the protective order and raised no contemporaneous objection to the enforceability of that order. Plaintiff identifies no precedent in which a litigant prevailed on an

Appointments Clause claim after voluntarily agreeing to adhere to the challenged order—let alone in a collateral challenge brought long after the underlying proceeding had concluded. The district court's decision to award relief on the merits under these novel circumstances is sharply at odds with the careful balance struck by the Supreme Court and other courts when establishing the limits of available remedies for Appointments Clause challenges.

### A. Plaintiff forfeited his challenge to the ALJ's authority by voluntarily agreeing to be bound by the protective order.

1. It is undisputed that plaintiff signed an acknowledgement agreeing to be bound by the terms of the protective order issued in the 1065 Investigation in exchange for an opportunity to work as an expert witness for one of the parties to that investigation. *See* Opening Br. 12-13; JA 48. He did so without noting any objection to the ALJ's authority to enter the protective order or bind him to it. Such voluntary submission to an administrative officer's authority readily amounts to forfeiture of any constitutional challenge to that officer's capacity to bind plaintiff. *See Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 849 (1986). That Appointments Clause claims can be forfeited

like any other kind of challenge is uncontroversial.  *See Freytag v. Commissioner*, 501 U.S. 868, 893-94 (1991) (Scalia, J., concurring in part and concurring in the judgement); *Ciena Corp. v. Oyster Optics, LLC*, 958 F.3d 1157, 1161 (Fed. Cir. 2020).

Plaintiff concedes, as he must, that Appointments Clause claims are subject to forfeiture.  Resp. Br. 41-42.  He nevertheless insists that the voluntary nature of his participation in the 1065 Investigation is "irrelevant."  Resp. Br. 43.  Plaintiff grounds that claim in the novel assertion that while *parties* who elect to appear before a particular forum can waive their Appointments Clause claims, an expert witness who voluntarily accepts an engagement to appear in a proceeding does not.  But the fact that plaintiff's role in the proceeding arose from his acceptance of a professional engagement only underscores the voluntary nature of his participation.  Unlike parties who may need to appear in a specially created forum if they wish to vindicate their statutory rights, plaintiff here would have ceded no legal entitlement by simply choosing not to participate.  *Cf. Carr v. Saul*, 593 U.S. 83, 88-89 (2021); *Schor*, 478 U.S. at 849; *Ciena Corp.*, 958 F.3d at 1161.  Plaintiff insists that appearing before the Commission's ALJ was his client's choice, not his.

Resp. Br. 43. But it was plaintiff who chose to accept this particular engagement for this particular client knowing that his agreement to be bound by the ALJ's protective order was a necessary condition of that acceptance.

In any event, this Court need not decide the circumstances under which a non-party can forfeit an Appointments Clause claim by voluntarily appearing in a forum. Although plaintiff was not a party to the 1065 Investigation, he most assuredly made himself a party to the *protective order* by signing the acknowledgment in which he agreed to be bound. *See* JA 48. By accepting obligations under that protective order, he received the personal benefit of access to confidential information produced in the 1065 Investigation. Without that access, it would likely have been impossible for him to work as a paid expert witness for Qualcomm. *See* 19 U.S.C. § 1337(n)(1) (barring disclosure of confidential information produced in proceedings under section 337 "except under a protective order"). Because the protective order was the sole source of plaintiff's ability to access confidential information, plaintiff is wrong to insist that he "had no reason to care" about its validity. Resp. Br. 43. Indeed, the implication of plaintiff's present

argument is that he was never lawfully able to receive confidential business information because he was not subject to a protective order in accordance with the statutory requirement.

For similar reasons, plaintiff is also wrong to insist that he had no basis for complaining about the protective order until the Commission's recent efforts to enforce it against him. From the moment plaintiff signed the acknowledgment, he undertook a number of immediately binding obligations that impacted his rights by restricting his ability to share, use, or retain any confidential business information he received. *See generally* JA 34-42. He also became subject to certain reporting obligations and a duty to return or destroy confidential material at the conclusion of the proceeding. *See id.* Thus, contrary to what the district court believed, plaintiff's "rights were put at issue" as soon as he agreed to be bound. JA 220. Plaintiff had a cognizable interest in, and every right to object to, that order's validity from the moment he signed the acknowledgment.

Plaintiff's decision to sign the acknowledgment, and do so without noting any reservation or objection, thus presents a paradigmatic case of forfeiture. By electing to be bound by the protective order and

availing himself of the corresponding benefits, he implicitly accepted its validity and forfeited any claim to the contrary.

2. Plaintiff emphasizes the district court's statement that it would excuse plaintiff's forfeiture. Resp. Br. 45-49. But as our opening brief explained (at 39-41), the district court proceeded on a mistaken understanding of the applicable legal framework. *See, e.g.*, JA 221-22 (suggesting that obstacles to asserting Appointments Clause claims are "disfavored," and that the "logic animating the forfeiture rule" does not apply to any claim that does not require record development or falls outside of an agency's expertise). But this Court's precedents make clear that only in "rare cases" is it proper for a court to address an Appointments Clause argument that a plaintiff has failed to preserve. *Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 574 F.3d 748, 755 (D.C. Cir. 2009) (per curiam) (quoting *Freytag*, 501 U.S. at 879). And it is plaintiff's obligation to "give[]" the Court "reason" to do so. *Id.* at 756.

Without acknowledging the governing legal standard, the district court determined that it would reach the merits of plaintiff's claim merely because not doing so would be "harsh." JA 223. And its

reasoning strongly suggested a belief that any Appointments Clause claim "that is neither frivolous nor disingenuous" should always be entitled to review on the merits, forfeiture notwithstanding. JA 222 (quoting *Freytag*, 501 U.S. at 879). That position is irreconcilable with this Court's precedents.

Plaintiff could not prevail under the correct standard. No "rare" circumstances justify review of the merits of plaintiff's forfeited Appointments Clause claim. To the contrary, plaintiff made a perfectly ordinary decision to sign the acknowledgment and agree to be bound by the protective order. To all appearances, he then continued to accept the validity of the protective order until the Commission commenced investigating his possible violation of its provisions. That is a common feature of forfeiture cases, not a rare one. Moreover, because the Commission has already taken steps to cure any flaw in its ALJs' appointments going forward, this case does not present an important or recurring legal question that requires resolution. *See Ciena Corp.*, 958 F.3d at 1161. The district court's decision to reach the merits of plaintiff's claim was therefore grounded in prejudicial legal error.

## B. Plaintiff's collateral challenge to the validity of the protective order is untimely.

Plaintiff's claim fails for the additional reason that it comes far too late. Whenever the Supreme Court has granted relief based on an Appointments Clause claim, it has taken pains to emphasize that the prevailing party raised its claim in a "timely" manner. *Lucia v. SEC*, 585 U.S. 237, 251 (quoting *Ryder v. United States*, 515 U.S. 177, 182 (1995)). With good reason. Absent a timeliness requirement, Appointments Clause decisions could have startlingly destabilizing effects. In the decades before *Lucia* was decided, thousands of ALJs, spread across dozens of agencies, issued millions of decisions without proper appointments. A rule that would call the validity and enforceability of each of those rulings into question would be untenable. Appointments Clause remedies are designed to mitigate these concerns and to protect the substantial reliance interests that government action creates. *Cf. Cirko ex rel. Cirko v. Commissioner of Soc. Sec.*, 948 F.3d 148, 159 (3d Cir. 2020) (explaining that principles of timeliness prevented a trickle of post-*Lucia* claims from becoming a flood).

These principles reflect considerations akin to those recognized in the de facto officer doctrine, which allows courts to treat the acts of an

officer whose appointment is later found to be flawed as "valid and binding." *Phillips v. Payne*, 92 U.S. 130, 132 (1875). "The de facto officer doctrine broadly applie[s] to claims . . . that an officer had been appointed by the wrong person." *Calcutt v. Federal Deposit Ins. Corp.*, 37 F.4th 293, 351 (6th Cir. 2022) (Murphy, J. dissenting), *cert. granted, opinion rev'd*, 598 U.S. 623 (2023) (per curiam). And like *Lucia*'s timeliness requirement, the doctrine provides "protection of the public and individuals whose interests may be affected" by the sudden invalidation of official acts. *Norton v. Shelby County*, 118 U.S. 425, 441 (1886).

Accordingly, plaintiff's challenge to the validity of the protective order issued in the 1065 Investigation is untimely. That proceeding reached repose after the Commission issued a final determination and no party sought judicial review within the 60-day period provided by statute. *See* JA 93-94; 19 U.S.C. § 1337(c). Plaintiff did not file this suit for nearly three years thereafter.

Plaintiff does not meaningfully deny that timeliness principles cabin the availability of Appointments Clause remedies. Resp. Br. 28. He incorrectly makes the categorical assertion that parties have "no

obligation to raise an Appointments Clause challenge before an agency adjudicator." Resp. Br. 29. But the case plaintiff cites for that proposition, *Carr*, 593 U.S. 83, rests on reasoning specifically limited to the context of the non-adversarial process for determining eligibility for Social Security benefits. This Court—and many others—have found Appointments Clause challenges untimely when not raised during other, adversarial forms of administrative adjudication that more closely resemble a section 337 investigation. *See Springsteen-Abbott v. SEC*, 989 F.3d 4, 8 (D.C. Cir. 2021); Opening Br. 34, 39.

In any event, *Carr* reaffirms that Appointments Clause challenges must be timely and elucidates "what would constitute a 'timely' objection in an administrative review scheme like the [Social Security Administration's]." *Carr*, 593 U.S. at 95. *Carr* concluded that in the context of Social Security proceedings, an Appointments Clause challenge would be considered timely raised if pressed in a timely filed suit seeking direct judicial review of a denial of benefits. *Id.* But even were that rule applicable to Commission proceedings, it would be of no help to plaintiff here, who did not raise any challenge within the period for direct review of the 1065 Investigation. And nothing in *Carr* could

be plausibly read to authorize a collateral challenge brought years after the agency adjudication had become complete and the time for seeking direct judicial review had expired.

Plaintiff insists that his challenge is not actually "collateral" because he is directly challenging the Commission's breach investigation. Resp. Br. 48-49. But that characterization only underscores that he—unlike the plaintiff in *Carr* and every other case on which plaintiff relies—did not raise his challenge in connection with the agency proceeding in which the alleged constitutional flaw occurred. Instead, he attempts to directly impede an ongoing investigation by collaterally attacking an order issued in a proceeding that has long since closed.

Plaintiff is left to argue that his non-party status in the 1065 Investigation justifies his belated collateral attack on the protective order because he was without recourse to raise a challenge while that proceeding was ongoing. But, as noted above, plaintiff was a party to the protective order and his rights were directly impacted from the moment he accepted it. If plaintiff would have been "laughed out of court" for attempting to challenge the protective order, Resp. Br. 30, it

would have been because he voluntarily accepted its burdens and benefits, not because those burdens were not yet concrete or particularized. This was certainly true when the 1065 Investigation concluded, triggering plaintiff's obligation to return or destroy all confidential business information in his possession. JA 41. If, contrary to that obligation, plaintiff wanted to keep the confidential transcript of the ALJ hearing in which he was a witness (Resp. Br. 9, 57-58), he could have sought declaratory relief enabling him to do so. Instead, it appears he may have simply chosen not to comply with that obligation without raising a contemporaneous challenge to its enforceability, either before the Commission or in court.

Plaintiff also insists that he had no mechanism for raising any objection with the Commission. But plaintiff was not without recourse. As discussed above in relation to forfeiture, plaintiff's first option was to simply decline to sign onto the protective order at all. *See supra* p. 13. He could also have communicated any concern to his client, Qualcomm, which was a party to the 1065 Investigation and could have made a motion or otherwise taken formal action before the ALJ. Plaintiff could also have submitted a letter or other informal inquiry to the ALJ or to

the Chairman of the Commission.  Indeed, plaintiff's own brief makes much of the fact that another non-party to the 1065 Investigation *did* take the opportunity to raise (other) Appointments Clause-related concerns in a letter to the Chairman.  *See* Resp. Br. 8, 40 (discussing Letter from Steven G. Calabresi to Chairman, Int'l Trade Comm'n (Feb. 6, 2019), https://edis.usitc.gov/external/attachment/666044-1389495.pdf).  If a complete stranger to the proceedings could find an opportunity to be heard, surely plaintiff—as a signatory to the protective order and participant in the 1065 Investigation—could have done the same.

## C. Relief at this late stage would disincentivize timely Appointments Clause challenges.

As the opening brief explained (45-48), the Supreme Court has recognized two principal considerations in granting remedies for timely and meritorious Appointments Clause claims: "curing the constitutional error" that deprived a plaintiff of an opportunity to have his case adjudicated by a duly appointed officer, *Lucia*, 585 U.S. at 251-52, and creating an incentive to timely raise such challenges, *Ryder*, 515 U.S. at 183.  Plaintiff has no rejoinder for the reality that granting relief under

the circumstances of this case would severely undermine both considerations.

First, plaintiff was not deprived of—and does not now seek—an opportunity to have his case heard by a duly appointed officer. The ALJ who oversaw the 1065 Investigation did not adjudicate any claim or right invoked by plaintiff. Instead, plaintiff chose to participate in the 1065 Investigation under the ALJ's purview and accepted the requirement that he abide by the terms of the protective order issued by the ALJ. And until the district court entered its injunction, plaintiff's obligations under that protective order *were* being adjudicated by a constitutionally compliant administrative body, the Commission. At bottom, what plaintiff wants is a complete release from any obligation to obey any protective order with respect to his handling of the confidential business information he obtained as a witness to the 1065 Investigation. Nothing in *Lucia* gives warrant for that kind of wholesale amnesty based on a flaw in an official's appointment.

Second, a grant of such total relief would not incentivize future plaintiffs to bring timely Appointments Clause challenges. Quite the opposite. Had plaintiff brought a timely challenge while the 1065

Investigation was pending, it would have been possible for the Commission to take steps to ensure that plaintiff (and other participants who obtained confidential business information during that investigation) remained bound by a fully compliant protective order. Yet because he waited, the district court permanently relieved plaintiff of his obligations under the protective order—a remedial windfall beyond anything awarded in *Lucia*. Litigants should not be in a position to profit by strategically sitting on their rights. *See* Opening Br. 48 (collecting cases discussing "sandbagging").[1]

Nor is there any countervailing benefit to the public to be gained from granting relief here. As the opening brief pointed out, the specific flaw plaintiff alleged in the ALJ's appointment is not a prospective concern. The Commission both ratified the appointments of its existing ALJs and altered its appointment practices for new ALJs. *See* Opening Br. 10.[2] From the perspective of the public interest, the constitutional

---

[1] Correspondingly, there is little public interest in rewarding litigants who fail to comply with orders they contemporaneously believed valid and who only identify an Appointments Clause defect in their search for a *post hoc* justification for noncompliance.

[2] As explained in our opening brief (10), ALJ Pender was originally appointed by the Chairman of the Commission subject to

*Continued on next page.*

concern has been addressed, and there is no reason to reward plaintiff for coming to court with an outdated claim.

Plaintiff insists that there remains a public interest in incentivizing Appointments Clause challenges to individual orders issued by improperly appointed ALJs when those orders have not been ratified. Resp. Br. 37 n.3. But plaintiff fails to explain why there is a public interest in upending orders in long-concluded proceedings that have reached finality and repose. The fact that the Commission's ALJs are now properly appointed, and are prospectively adjudicating cases consistent with constitutional requirements, is sufficient to vindicate the concerns addressed in *Lucia*.

## III.  The Injunction Is Founded On Reversible Error.

The district court also committed reversible error when granting injunctive relief. There is no doubt that "a plaintiff seeking a permanent injunction" must satisfy the familiar four-factor test for equitable relief. *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). "The decision to grant or deny permanent injunctive relief is an

---

disapproval by a majority vote of the Commission. 19 U.S.C. § 1331(a)(1)(A), (C). The full Commission then ratified his appointment in March 2018.

act of equitable discretion by the district court, reviewable on appeal for abuse of discretion." *Id.* But failure even to apply the required factors in either granting or denying permanent injunctive relief is reversible legal error. *Id.* at 392-93. The district court's order did not even consider the equities and the public interest, which, in any event, weighed decisively against a grant of injunctive relief here.

1. Plaintiff does not dispute that the district court did not apply the four-factor test before granting permanent injunctive relief. That is unquestionably reversible error. *See eBay*, 547 U.S. at 394 (vacating and remanding "[b]ecause" the lower courts failed to "correctly appl[y] the traditional four-factor framework that governs the award of injunctive relief"). Plaintiff does not meaningfully defend this gap in the district court's analysis but instead argues that the Commission forfeited any objection on this front. But it was *plaintiff's* burden to demonstrate entitlement to injunctive relief. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). And application of forfeiture principles would be particularly inappropriate in the context of the injunctive factors, which are designed to account for any injury to the public at large as well as to the defendant. In this case, the district

court failed to grapple with the equities of declaring void and unenforceable a protective order that was issued principally for the benefit of private companies like Qualcomm, Apple, and Intel, none of whom are represented here.

Plaintiff also suggests (Resp. Br. 62) that consideration of the injunctive factors was unnecessary because injunctive relief must follow as a matter of right from a successful claim on the merits, but that assertion is flatly incorrect. As this Court recently reiterated, that a plaintiff has a meritorious claim that can be remedied by injunctive relief "does not necessarily make injunctive relief appropriate on the merits." *Anatol Zukerman & Charles Krause Reporting, LLC v. U.S. Postal Serv.* (*Zukerman*), 64 F.4th 1354, 1363 (D.C. Cir. 2023). That is true *even when* there is no dispute that the plaintiff suffered an irreparable injury and lacks an adequate remedy at law. *Id.* at 1364. In that circumstance, a district court still must consider the balance of equities and the public interest, *id.*, and may conclude in light of those factors that permanent injunctive relief is not appropriate, *see id.* (finding "no abuse of discretion" in that circumstance). Because the

district court in this case failed to undertake the required balancing, the injunction must be vacated.

2. Even if the district court had undertaken a full equitable analysis, it would have abused its discretion in granting an injunction here. The balance of equities and the public interest weigh decisively against such relief. The potential consequences of declaring the protective order in the 1065 Investigation unenforceable against all the non-parties who participated in that proceeding—including Apple and Qualcomm's respective teams of outside counsel, their experts, their e-discovery vendors, and their trial-demonstrative vendors—would fall primarily on private businesses who submitted confidential information in aid of that proceeding. *See* Opening Br. 51-52. This includes not only the parties themselves but also non-party companies that complied with third-party discovery requests.

The district court's order also casts doubt on the enforceability of the protective orders issued in more than a thousand other section 337 investigations that are indistinguishably situated. *See* Opening Br. 52. Moreover, upholding the district court's grant of injunctive relief would set a new and dangerous precedent: that protective orders, even in

administrative proceedings that have long reached repose, may be invalidated at any moment. That in turn threatens to chill private parties' willingness to provide their confidential information for use in Commission investigations.

Plaintiff dismisses these concerns, insisting that they are irrelevant because any fault lies with the Commission for not attempting to reissue the protective orders in the roughly 1,000 cases under section 337 that the Commission had heard before the ratification of the agency's ALJs. Resp. Br. 59. But doing so would have raised at least complicated questions of ratification law, the Commission's authority to reactivate long-closed proceedings, and whether the ratified protective orders could be enforced without obtaining a new acknowledgment from each of the parties who agreed to abide by those orders as originally issued. Moreover, because Appointments Clause claims are subject to principles of timeliness and forfeiture, *see supra* Part II, the Commission had no reason to believe that such an undertaking would be necessary or that orders from long-

concluded proceedings remained susceptible to collateral attacks like the one presented here.[3]

Nor is the assessment of harm altered by plaintiff's representation to this Court that he did not disclose any confidential business information. Resp. Br. 57. That assertion only underscores the fact that the Commission has been denied the opportunity to investigate the full scope of plaintiff's possible breach of the protective order. And even accepting plaintiff's assertions at face value, he does not dispute that he retained a confidential transcript (Resp. Br. 58) despite the protective order's mandate that all confidential business information be returned

---

[3] The response brief references what purports to be a leaked memorandum containing "Privileged and Confidential Attorney Work Product" conveying legal advice from the Office of the Solicitor General to federal agencies. Resp. Br. 7, 40 (citing Office of the Solicitor Gen., U.S. Dep't of Justice, *Guidance on Administrative Law Judges After Lucia v. SEC (S. Ct.)* (July 2018), https://perma.cc/M8JD-BEUS (*Guidance*)). Even were it proper to consider this document—and it most assuredly is not—that memorandum lends no support to plaintiff's claim that the Commission failed to take reasonable action in the wake of *Lucia*. The full Commission ratified the appointments of the agency's ALJs even before *Lucia* was decided. Opening Br. 10. With respect to individual orders that issued prior to the ratification, that memorandum suggests that corrective action should be taken only in pending administrative cases *in which litigants properly raised and preserved Appointments Clause challenges. Guidance* 7-8. As noted, no participant in the 1065 Investigation (including plaintiff) raised an Appointments Clause challenge.

or destroyed. Such retention, even if unintentional or without malicious purpose, places the confidential business information of the private businesses involved in the 1065 Investigation at risk of accidental disclosure or theft. The Commission's ability to investigate any retention is thus an important aspect of the protection it offers the private parties who participate in such trade investigations.

Plaintiff is also wrong to suggest that his assertion of a constitutional claim trumps the significant countervailing equitable considerations. *See* Resp. Br. 63. Even when injunctive relief would redress a violation of a constitutional right, harms to the public interest resulting from such an injunction may still outweigh plaintiff's harms. *See Zukerman*, 64 F.4th at 1359 (explaining that the plaintiff asserted a meritorious First Amendment claim but affirming the district court's denial of injunctive relief); *see also id.* at 1364 (concluding that the district court was "within its discretion to credit" the government's expected harms from entry of the injunction the plaintiff requested).

Moreover, plaintiff's claim of irreparable constitutional harm (Resp. Br. 63) depends entirely on his view of the underlying merits of this case—that the Commission's investigation of plaintiff's possible

violation of the protective order by which he agreed to be bound is unconstitutional even though the Commission is constitutionally structured and statutorily authorized to conduct such investigations. For the reasons explained above, *see infra* Part I, requiring plaintiff to see the Commission's investigation through would not subject him to any constitutional harm. Plaintiff would suffer nothing more than the inconvenience of an investigation into whether he breached duties he voluntarily undertook. That burden is readily outweighed by the widespread harms the district court's injunction would impose on the public interest.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be reversed and the permanent injunction should be vacated.

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

JOSHUA M. SALZMAN

*s/ Anna M. Stapleton*
ANNA M. STAPLETON
*Attorneys, Appellate Staff*
*Civil Division, Room 7213*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-3511*
*Anna.M.Stapleton@usdoj.gov*

March 2024

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 28.1(e)(2)(A) because it contains 6,307 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Century Schoolbook 14-point font, a proportionally spaced typeface.

*/s/ Anna M. Stapleton*
Anna M. Stapleton

## CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system.  Service will be accomplished by the appellate CM/ECF system.

*/s/ Anna M. Stapleton*
Anna M. Stapleton